# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1222

_____

| | | |
|---|---|---|
| Janet Shanklin, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Katheryn E. Fitzgerald; Robert D. | * | |
| Drummond; Keith A. Gillming; | * | |
| Randall J. McArthur; Pat Bryant; | * | |
| Ronald C. Kuschel, | * | |
| | * | |
| Defendants, | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Pattonville R-111 School District | * | District of Missouri. |
| Board of Education, | * | |
| | * | |
| Defendant/Appellee, | * | |
| | * | |
| Sharon Washington; Jennifer Schneider; | * | |
| Jeff Marion; Tom Morgan, Dr.; | * | |
| Hugh H. Kinney, | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Marc Montgomery, | * | |
| | * | |
| Movant Below. | * | |

_____

Submitted:  November 15, 2004
Filed:  February 4, 2005

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.
_____

RILEY, Circuit Judge.

Janet Shanklin (Shanklin) brought this race discrimination and retaliation action against her former employer, the Pattonville R-111 School District Board of Education (Board), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010-213.137. Shanklin appeals the district court's[1] decision (1) to strike Shanklin's unauthenticated exhibits attached to her opposition to the Board's motion for summary judgment, and (2) to enter summary judgment in favor of the Board. We affirm. Additionally, we grant the Board's motion to strike portions of Shanklin's appendix on appeal.

## I.    BACKGROUND

On August 27, 1991, Shanklin, an African-American woman, began teaching marketing education for the Pattonville R-111 School District in St. Louis, Missouri. Shanklin taught at the Positive School, an alternative high school for "at risk" students.

From 1991 to 1997, Mike Black (Black) was the Assistant Principal of the Positive School and Shanklin's immediate supervisor. During his supervision of Shanklin, Black rated Shanklin's performance as acceptable. Marc Montgomery (Montgomery) replaced Black as the Assistant Principal at the start of the 1997-98 school year. Montgomery immediately had concerns regarding Shanklin's

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

performance. In particular, Montgomery observed Shanklin's classes and was troubled Shanklin did not (1) use a variety of teaching methods effectively, (2) demonstrate an ability to communicate effectively with students, or (3) manage student behavior in a constructive manner. Notwithstanding these concerns, Montgomery rated Shanklin's performance as acceptable in her 1997-98 Formative Evaluation.

During the 1998-99 school year, Montgomery reprimanded Shanklin on two occasions: (1) in March 1999, Montgomery reprimanded Shanklin for using the word "fucking" during a confrontation with a student; and (2) in May 1999, Montgomery reprimanded Shanklin for distributing an individual's personal income tax form to the class for instructional purposes without the individual's consent. Shanklin admitted to cursing and to disseminating the tax form without the individual's prior knowledge or consent. Montgomery's Summative Evaluation of Shanklin for the 1998-99 school year stated Shanklin needed improvement in four areas: (1) using a variety of teaching materials effectively, (2) demonstrating an ability to communicate effectively with students, (3) managing student behavior in a constructive manner, and (4) demonstrating positive interpersonal relationships with students. On May 7, 1999, Montgomery placed Shanklin on a Performance Improvement Plan (PIP), which was designed to help Shanklin cure her four areas of deficiency.

Montgomery reprimanded Shanklin twice more during the 1999-2000 school year. Montgomery first reprimanded Shanklin in October 1999, after students complained Shanklin told them they could not go to college given their "past patterns." The second reprimand occurred in May 2000, after a student complained Shanklin called the student a "dumb shit" and told him, "if [Shanklin] was not a teacher, [she] would knock [the student] upside [his] head with a stick." After Montgomery observed Shanklin's classroom on several occasions during the 1999-2000 school year, Montgomery did not believe Shanklin had cured the deficiencies noted in the PIP. At the end of the 1999-2000 school year, Montgomery met with

Shanklin to implement another PIP. Since it was the end of the school year, the school administrators decided not to implement the PIP until the start of the next school year.

In the spring of 2000, the Board created a new business education teacher position at the Positive School. When the Board was unable to fill the new position with a qualified individual, the Board transferred Shanklin to the position because Shanklin was qualified for the position. The Board then hired a white female to teach marketing education. On October 2, 2000, Shanklin filed a grievance with the Board regarding the transfer. On October 6, 2000, Shanklin filed a race discrimination charge with the Equal Employment Opportunity Commission (EEOC). The Superintendent of Schools, Dr. Hugh Kinney (Dr. Kinney), denied Shanklin's grievance on November 1, 2000, finding the Board followed the applicable policies relating to teacher assignments. In his denial letter, Dr. Kinney further "express[ed] a concern regarding [Shanklin's] relationships with students," and suggested "a pattern is developing which is inconsistent with a productive learning environment." On November 9, 2000, Shanklin accepted Dr. Kinney's decision. Shanklin voluntarily dismissed her EEOC charge on February 28, 2001.

In October 2000, Montgomery issued Shanklin a second PIP. Shanklin refused to sign the PIP until December 2000. In the meantime, Shanklin's performance deficiencies continued. On October 26, 2000, Montgomery reprimanded Shanklin for cursing in class. A few days later, Montgomery again reprimanded Shanklin, this time for tape recording her class after she was directed not to use a tape recorder.

On November 7, 2000, the Board, through Dr. Kinney, issued Shanklin a thirty-day warning letter, i.e., Notice of Deficiencies, specifying several items of "incompetency, inefficiency and insubordination." The Notice of Deficiencies advised Shanklin the Board believed Shanklin's "conduct reflects a mental condition making [Shanklin] unfit to instruct or associate with children." The Notice of

Deficiencies further warned that if her performance did not improve within thirty days, the Board would recommend Shanklin's dismissal. During Shanklin's thirty-day probationary period, she failed to cure her deficiencies. Shanklin, on the other hand, expressed concerns about Montgomery's supervision and about not having enough time to resolve her deficiencies.

Rather than beginning the process to discharge Shanklin, the Board, in January 2001, issued Shanklin a second Notice of Deficiencies, giving her an additional five months to correct her deficiencies. During the five-month probationary period, a three-member team evaluated Shanklin's performance. At Shanklin's request, the Board removed Montgomery from Shanklin's evaluation team. Shanklin requested Assistant Principals Sharron Washington (Washington) or Vince Grippi be placed on the evaluation team. The Board placed Washington, an African-American, on Shanklin's evaluation team. The Board also granted Shanklin's request that her classes be videotaped.

The evaluation team observed Shanklin's classes by announced and unannounced classroom visits as well as by reviewing videotapes of Shanklin's classes. After reviewing Shanklin's classroom performance, each evaluator expressed specific concerns about Shanklin's performance. Based on the evaluators' observations, on June 20, 2001, Dr. Kinney issued a Statement of Charges, alleging Shanklin was (1) incompetent and inefficient in failing to maintain satisfactory relationships with students and failing to utilize effective instructional methods, and (2) insubordinate in failing to comply with Board policy.

Pursuant to Shanklin's request, the Board conducted a hearing regarding the Statement of Charges. At the hearing, Shanklin was represented by counsel, and her counsel cross-examined adverse witnesses and presented evidence in Shanklin's defense. All three members of Shanklin's evaluation team testified they had concerns about Shanklin's performance, and each evaluator recommended the Board discharge

Shanklin. After considering the evidence presented at the hearing, the Board unanimously voted to discharge Shanklin.

Shanklin sued the Board in federal court, alleging (1) race, sex, and age discrimination; (2) harassment; and (3) retaliation. Shanklin later abandoned all her claims except race discrimination and retaliation. The Board filed a motion for summary judgment on Shanklin's remaining claims. In opposing summary judgment, Shanklin submitted ninety-four exhibits, many of which were unauthenticated. Shanklin states her supporting affidavits "were inadvertently left out of the paper filing." The Board filed a motion to strike Shanklin's unauthenticated exhibits, which Shanklin did not oppose. The district court granted the Board's motion to strike, because Shanklin "submitted no affidavits in opposition to the motion for summary judgment." Without any affidavits to authenticate Shanklin's exhibits, the district court considered Shanklin's own sworn statements and the Board's authenticated evidence.

Citing the dearth of evidence supporting Shanklin's claims, the district court granted the Board's motion for summary judgment. With regard to her race discrimination claim, the district court held Shanklin failed (1) to establish a prima facie case of race discrimination, and (2) to show the Board's reasons for discharging her were pretextual. As to Shanklin's retaliation claim, the district court concluded (1) Shanklin did not plead a retaliation claim under Title VII, e.g., not alleging the filing of her EEOC charge and not mentioning the word "retaliation," and (2) she failed to establish a prima facie case of retaliation under the MHRA.

## II. DISCUSSION

### A. Motion to Strike Unauthenticated Exhibits

In reviewing Shanklin's claims, the district court granted the Board's unopposed motion, and struck Shanklin's unauthenticated and inadmissible exhibits, a decision Shanklin now challenges on appeal. We conclude Shanklin has waived her

objection to the district court's decision to grant the Board's motion to strike by failing to respond to the Board's motion below. Absent exceptional circumstances, we cannot consider issues not raised in the district court. See Gregory v. Honeywell, Inc., 835 F.2d 181, 184 (8th Cir. 1987) (holding issues not raised in the district court will not be considered by the reviewing court as a basis for reversal, except in exceptional cases where the obvious result would be a plain miscarriage of justice or would be inconsistent with substantial justice). As exceptional circumstances are not present in this case, we hold Shanklin has waived this issue on appeal.

Even if Shanklin had preserved this motion to strike issue, her failure to authenticate her submissions precludes consideration of such evidence. As the district court explained: "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e). Documents which do not meet those requirements cannot be considered." (quoting Stuart v. Gen. Motors Corp., 217 F.3d 621, 635-36 n.20 (8th Cir. 2000)). In light of the lack of affidavits supporting Shanklin's submissions, we conclude the district court neither abused its discretion nor committed any error of law by striking Shanklin's unauthenticated and inadmissible exhibits. See United States v. Smith, 383 F.3d 700, 706 (8th Cir. 2004) ("We review de novo the district court's interpretation and application of the rules of evidence, and review for an abuse of discretion the factual findings supporting its evidentiary ruling.") (citing United States v. Blue Bird, 372 F.3d 989, 993 (8th Cir. 2004)).

### B.    Summary Judgment

We review *de novo* a district court's grant of summary judgment. Schoolhouse, Inc. v. Anderson, 275 F.3d 726, 728 (8th Cir. 2002). When considering a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party. Id. Summary judgment is proper if there is no genuine issue as to

any material fact and "the moving party is entitled to judgment as a matter of law." Id.; Fed. R. Civ. P. 56(c). We analyze Shanklin's MHRA claims in the same manner as her Title VII claims. See Weyers v. Lear Operations Corp., 359 F.3d 1049, 1056 n.6 (8th Cir. 2004).

### 1.     Race Discrimination Claims

To establish a prima facie case of race discrimination, Shanklin must show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) "similarly situated employees outside the protected class were treated differently." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). If Shanklin establishes a prima facie case, the Board must produce "a legitimate, non-discriminatory reason for the adverse employment action." Id. If the Board meets its burden of production, "the presumption raised by the prima facie case disappears, and the burden shifts back to [Shanklin] to show that the articulated reason was a pretext for discrimination." Id.

Shanklin is a member of a protected class. However, Shanklin's prima facie case quickly unravels because she failed to show she met the Board's legitimate expectations. Shanklin states her teaching ability far exceeded any other teacher at the Positive School. However, Shanklin failed to offer any evidence to suggest she met the Board's legitimate expectations. To the contrary, Shanklin received unfavorable evaluations, and she failed to cure her serious and repeated performance deficiencies, even after the Board gave her an additional five months to improve.

During Shanklin's probationary period, an evaluation team, which included a member of Shanklin's own choosing, observed her classes. Even under this known scrutiny, Shanklin's performance was unacceptable. The evaluators found serious performance deficiencies in Shanklin's relationships with students and her inability to structure lessons effectively and provide educational guidance. All three evaluators testified at Shanklin's discharge hearing regarding her poor performance,

and each evaluator recommended Shanklin be discharged. Specifically, Dr. Jeff Marion (Dr. Marion), Principal of the Pattonville High School, testified that, based on his observations, Shanklin's "instruction is not very effective and most likely is hurting the kids. They are not getting the education they should be getting. . . . Quite honestly, I believe she's probably the worst teacher that I've observed." Washington, Assistant Principal of the Pattonville High School and Shanklin's chosen evaluator, testified Shanklin's "teaching style is harmful to kids" and Shanklin was "[n]ear the bottom" compared to other Pattonville teachers he had evaluated over the past ten years. Finally, Jennifer Schneider (Schneider), another Assistant Principal of the Pattonville High School, testified that, based on her observations, Shanklin was "harmful to students" because of her ineffective teaching methods and because of her negativity in the classroom. Schneider also testified that, compared to other teachers she had evaluated, Shanklin ranked "[a]t the bottom of the list."

Shanklin offers no evidence, other than her own bald assertions, to contradict the Board's evidence. She simply states she "questioned" the deficiencies noted by the Board. Shanklin's questioning of her reported deficiencies is insufficient to create a genuine issue of material fact, where such assertions are totally unsupported by the record. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (affirming grant of summary judgment because nonmoving party's only evidence to rebut motion was unsubstantiated statements in deposition). Because Shanklin failed to demonstrate she met the Board's legitimate expectations, she fails to establish a prima facie case of race discrimination.

Even if Shanklin had established a prima facie case, her race discrimination claims still would fail. The district court properly recognized the Board offered legitimate, non-discriminatory reasons for Shanklin's discharge, namely that she did not improve in the specific deficient areas in which she repeatedly was counseled. Additionally, Shanklin failed to show the Board's proffered reasons were a pretext for unlawful race discrimination. Shanklin must present some evidence, direct or

indirect, that she was discharged because of her race. Because Shanklin has failed to do so, we hold the district court correctly granted summary judgment on Shanklin's race discrimination claims.

### 2. Retaliation Claims

The district court concluded (1) Shanklin did not plead a Title VII retaliation claim, and (2) even if Shanklin adequately pled a MHRA retaliation claim, she failed to establish a prima facie case of retaliation. Shanklin challenges the district court's grant of summary judgment to the Board, arguing the district court "completely ignores the mountain of evidence showing the increased level of discipline [Shanklin] immediately became subject to."

To establish a prima facie case of retaliation, Shanklin must show (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection between the protected activity and the adverse employment action. Tolen, 377 F.3d at 883. The defendant then may rebut the plaintiff's prima facie "case by advancing a legitimate, non-retaliatory reason for the adverse" action it took against the plaintiff. Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir. 2001). "If the defendant makes this showing, the plaintiff must" demonstrate the defendant's proffered reason was a pretext for illegal retaliation. Id.

Assuming, without deciding, that Shanklin adequately pled a retaliation claim, we conclude her claims fail because she failed to present any evidence of a causal nexus between her filing of an EEOC charge in October 2000 and her discharge in August 2001. Standing alone, a longer time gap between the protected activity and the adverse employment action "weakens the inference of retaliation that arises when a retaliatory act occurs shortly after a complaint." Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 989 (8th Cir. 1999) (citation omitted). Ten months elapsed between the date Shanklin filed her EEOC charge and the date the Board discharged Shanklin. With this lengthy delay, any causal nexus inference tends to evaporate.

-10-

The lack of causal connection is reinforced by the undisputed evidence of Shanklin's failure to meet the Board's expectations. Even if Shanklin established a prima facie case of retaliation, the evidence described above forecloses any finding the Board's reasons given for discharging Shanklin were pretextual. As we have noted, filing a complaint "does not clothe [Shanklin] with immunity for past and present inadequacies, [and] unsatisfactory performance." Kneibert v. Thomson Newspapers, Mich., Inc., 129 F.3d 444, 455 (8th Cir. 1997) (alteration in original) (quotation omitted). A school board's primary responsibility is the education and welfare of students. Absent illegal intent, a school board must be free, consistent with due process, to remove ineffective teachers.

### C.  Motion to Strike

The Board moves to strike portions of Shanklin's appendix on appeal. We grant the Board's motion because such evidence was not before the district court at the time the district court entered summary judgment. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 994 (8th Cir. 2003); see Fed. R. App. P. 10(a).

## III.  CONCLUSION

We affirm the district court's order striking Shanklin's unauthenticated and inadmissible exhibits and the district court's grant of summary judgment to the Board. We also grant the Board's motion to strike Shanklin's appeal proffers.

_____