# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2601

_____

| | | |
|---|---|---|
| Susan Johnson; Robert Johnson; | * | |
| Cozy Kittens Cattery LLC, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Elizabeth Arden, dba | * | |
| ComplaintsBoard.com; Michelle | * | |
| Reitenger; ComplaintsBoard.com, | * | |
| InMotion Hosting Inc.; Melanie | * | |
| Lowry; Kathleen Heineman, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: February 10, 2010
Filed: August 4, 2010 **(Corrected 8/11/10)**

_____

Before RILEY, Chief Judge,[1] SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Susan and Robert Johnson filed a state civil suit making multiple claims against several defendants as a result of allegedly defamatory statements posted on an internet discussion board. The defendants removed the case to federal court. The original

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

complaint included six defendants; however, the Johnsons located and served only InMotion Hosting, Inc. ("InMotion"), Melanie Lowry, and Kathleen Heineman.

The district court[2] dismissed the claims against InMotion with prejudice, finding that the Communications Decency Act (CDA) of 1996, 47 U.S.C. § 230(c)(1) and (e)(3) protects InMotion. The court dismissed the claims against Lowry and Heineman without prejudice, finding that Lowry and Heineman had insufficient contacts with the State of Missouri to be subjected to personal jurisdiction in Missouri. Finally, the district court set aside a state court default judgment against Lowry under Federal Rule of Civil Procedure 60(b). On appeal, the Johnsons argue that the district court erred in dismissing the claims against InMotion, Heineman, and Lowry and erred in setting aside the default judgment against Lowry. For the reasons stated below, we disagree and affirm.

## I. *Background*

The Johnsons reside in Unionville, Missouri, where they own and operate the exotic cat breeding business known as the Cozy Kitten Cattery. The Cozy Kitten Cattery is a Missouri limited liability company formed in 2007. Its principal office and place of business is located in Missouri, and the Johnsons are its sole members. Around December 2004, the Johnsons obtained a registered federal trademark and service mark for "Cozy Kitten Cattery." The Johnsons operate their cat breeding business under that trademark and licensed the use of that trademark and service mark to Cozy Kitten Cattery, LLC. The Johnsons advertise their business on the internet and have a website with the web address www.CozyKittens.com.

Someone posted several allegedly defamatory statements about the Cozy Kitten Cattery on the interactive website www.ComplaintsBoard.com. In response, the

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

Johnsons and Cozy Kittens Cattery filed suit against Elizabeth Arden d/b/a www.ComplaintsBoard.com, Michelle Reitenger, www.ComplaintsBoard.com, InMotion, Lowry, and Heineman in Putnam County, Missouri. Counts I, II and III allege that all six defendants conspired to use www.ComplaintsBoard.com to post false statements about the Johnsons, including statements that the Johnsons kill cats, the Johnsons "rip off" cat breeders, the Johnsons steal kittens, the Johnsons' cats and kittens are infected, and the Johnsons are con artists. The Johnsons assert that they requested all defendants to remove the statements but that the statements were not removed for more than 48 hours. The Johnsons assert that they suffered lost sales of kittens and cats, lost revenue and lost goodwill and will continue to suffer damages because of the statements posted on the interactive website.

The Johnsons assert that InMotion, Lowry, and Heineman were all served with the Summons and Petition/Complaint, although all three dispute service. The Johnsons were unable to locate or serve defendants Elizabeth Arden d/b/a www.ComplaintsBoard.com, Michelle Reitenger or www.ComplaintsBoard.com.

Heineman, Lowry, and InMotion moved in district court to dismiss the action based on lack of personal jurisdiction and insufficient service of process. Heineman and InMotion also asserted improper venue as an additional ground for dismissal.

A. *Kathleen Heineman*

Heineman is a resident of the State of Colorado and has been since 1981. Heineman is a cat breeder and also works as an accountant. In both capacities, she works out of her home in Colorado. She maintains no offices in Missouri, owns no property in Missouri and does not pay taxes in Missouri. She also alleges that she does not own any domain name registrations and does not own or operate any website. However, the website, www.BoutiqueKittens.com, and the related cat breeding and selling business are licensed by the State of Colorado to Heineman, and thus for the purpose of this appeal, we will assume that Heineman owns the website in question.

The Johnsons assert that Heineman sells cats and kittens throughout the United States, including the State of Missouri, while advertising on the internet using the web address www.BoutiqueKittens.com. The Johnsons allege that Heineman advertises and sells cats and kittens under the name "Cozy Kittens and Cuddly Cats."

Heineman had a limited business relationship with the Johnsons, which ended in March 2006. The Johnsons never employed Heineman or paid her a salary. She provided administrative assistance to the Johnsons from her home office in Colorado, including proofreading services and other miscellaneous work on an intermittent basis, such as helping them to acquire cats.

Between 2002 and 2006, the Johnsons contend that Heineman purchased about 16 cats for them from breeders throughout the United States. Heineman did not profit from the purchase of these cats. Some of these cats were shipped to Heineman in Colorado and then eventually shipped to Susan Johnson in Missouri; other cats were picked up from the sellers directly by the Johnsons or their relatives. In 2002, Heineman twice delivered cats to the Johnsons in Missouri. During the course of their relationship, the Johnsons contend that they shipped seven cats to Heineman and charged her only for their out-of-pocket expenses.

In the course of their relationship, Heineman also purchased advertising space from the Johnsons on www.CozyKittens.com for a fee of $100 per kitten advertised. The Johnsons' website then listed Heineman's email address as the contact email for persons interested in those cats. These advertisements were not targeted to Missouri residents, and Heineman did not place any cats or kittens or do any other business in Missouri. Heineman advertised approximately 50 cats in this manner. Heineman asserts that she has not posted or authorized anyone else to post anything about the Johnsons on www.ComplaintsBoard.com or on any other website.

## B. *InMotion Hosting, Inc.*

InMotion is a California corporation and maintains its principal place of business there. InMotion, as an internet service provider (ISP), only hosted the www.ComplaintsBoard.com website. InMotion does not operate www.ComplaintsBoard.com or create any of its content. InMotion does not monitor or control the content of its customer's websites, including www.ComplaintsBoard.com.

The website www.ComplaintsBoard.com is published worldwide on the internet. The website is interactive, permitting and encouraging individuals to post complaints about businesses and business owners. Individuals seeking to post complaints on the website are required to register with the website and provide identifying information, such as their name and email address.

## C. *Melanie Lowry*

Lowry resides in California and does not own any property in Missouri, does not have any bank accounts or telephone listings in Missouri, has never paid taxes in Missouri, and has never transacted business in Missouri. Lowry asserts that she has never done business with the Johnsons, does not know them, and has only spoken to Susan Johnson one time on the telephone—a call initiated by Susan Johnson.

The Johnsons assert that Lowry's postings on www.ComplaintsBoard.com included statements that Susan and Robert Johnson had sold a breeder cat without providing the papers, offered a refund but refused to pay it, stolen money from their customers, and fed their cats Tylenol, causing them to suffer horrible deaths and pre-death injuries.

The record contains one alleged posting by Lowry on www.ComplaintsBoard.com. That alleged posting does not mention Missouri, and

there is no other evidence in the record indicating that the focal point of this particular posting, or any of Lowry's other postings, was Missouri.

The Johnsons filed a state court complaint against Lowry, who they assert was properly served on July 17, 2008. Lowry did not respond or file a pleading. A Missouri default judgment was filed against Lowry on September 22, 2008. Lowry filed a motion to set aside the judgment on November 12, 2008.

## D. *Procedural History*

The defendants removed the case to federal court based on diversity of citizenship. Heineman filed a motion to dismiss contending that she was not properly served and that the district court had improper venue and lacked personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court granted Heineman's motion for lack of personal jurisdiction. The Johnsons then filed a motion for an order of default against InMotion, which had not yet filed any pleadings in the district court. The district court denied the motion.

InMotion then filed its motion to dismiss under Rule 12(b), contending that it was not properly served, the district court did not have venue, the complaint failed to state a claim for relief, it had insufficient contacts with Missouri to be sued there, and Missouri was an inconvenient forum. InMotion did not raise the CDA as a defense. The district court raised the CDA *sua sponte* in its order granting InMotion's motion to dismiss.

Finally, Lowry, pro se, filed a two-page letter/motion moving to dismiss the complaint against her, claiming that she was not properly served and that the district court lacked personal jurisdiction because she had insufficient contacts with the State of Missouri. In the same motion Lowry moved to set aside the default judgment on liability pending against her.

The district court entered an order dismissing the claims against InMotion with prejudice and dismissing the claims against Lowry and Heineman without prejudice. The district court found that Lowry and Heineman had insufficient contacts with the State of Missouri to be subjected to personal jurisdiction there and that the CDA barred claims against InMotion. The district court also set aside the state court default judgment against Lowry under Federal Rule of Civil Procedure 60(b) but made no specific finding in support of that ruling.

## II. *Discussion*

On appeal, the Johnsons argue that the district court erred in (1) dismissing the claims against InMotion, after finding that InMotion was immune from suit under the CDA; (2) dismissing the claims against Heineman for lack of personal jurisdiction; (3) dismissing the claims against Lowry for lack of personal jurisdiction; and (4) abused its discretion in setting aside the default judgment against Lowry.

### A. *Communications Decency Act*

The Johnsons first argue that the district court erroneously dismissed their claims after concluding InMotion is immune under the CDA. The Johnsons contend that 47 U.S.C. § 230(c)(1) and (e)(3) merely provide that a provider of internet services shall not be treated as the publisher or speaker of information on the internet provided by another party but does not immunize a provider from suit. The Johnsons assert that Missouri law provides for joint liability where a wrong is done by concert of action and common intent and purpose. According to the Johnsons, the CDA would only bar actions against website operators deemed to be the "publisher or speaker" of defamatory material.

InMotion responds that the district court correctly found that InMotion was immune from suit under the CDA. Additionally, InMotion asserts that it maintained no control and had no influence over the content that the Johnsons alleged was posted on www.ComplaintsBoard.com by unrelated third parties. Because of this, InMotion

maintains, it could not have "acted in concert" or "intentionally inflicted emotional distress" in a manner that caused any damage to the Johnsons.

This case presents an issue of first impression for this court, as we have not previously interpreted § 230(c). "Statutory interpretation is a question of law that we review de novo." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006). The CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and expressly preempts any state law to the contrary, *id*. § 230(e)(3).[3] The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the internet or any other interactive computer service." *Id*. at § 230(f)(3).

Read together, these provisions bar plaintiffs from holding ISPs legally responsible for information that third parties created and developed. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162–64 (9th Cir. 2008) (holding that CDA immunity did not apply to website that was designed to force subscribers to divulge protected characteristics, but that CDA immunity did apply to the "Additional Comments" section of the website where the information was created by third parties and not required by the website ISP). "Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009).

---

[3]Section 230(e)(3) states:
(3) State law—Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

"The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)). The district court, following majority circuit precedent, held that § 230(c)(1) blocks civil liability when web hosts and other ISPs refrain from filtering or censoring the information that third parties created on their sites. *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (holding that under the CDA the defendant ISP is not liable for failing to monitor, screen, or delete allegedly defamatory content from its site).

It is undisputed that InMotion did not originate the material that the Johnsons deem damaging. InMotion is not a "publisher or speaker" as § 230(c)(1) uses those terms, therefore, the district court held that InMotion cannot be liable under any state-law theory to the persons harmed by the allegedly defamatory material. Five circuit courts agree. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) (affirming dismissal of a claim brought by a public-traded company against an internet message board operator for allegedly false and defamatory postings by pseudonymous posters); *Batzel v. Smith*, 333 F.3d 1018 1032–33 (9th Cir. 2003) (holding that even if operator of internet services could have reasonably concluded that the information was sent for internet publication, he was immunized from liability for the defamatory speech as a "provider or user of interactive computer services" under the CDA); *Green v. Am. Online*, 318 F.3d at 471; *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (finding that defendant ISP was immune to the defamation claim under the CDA when it made its own editorial decisions with respect to third-party information published on its website); *Zeran*, 129 F.3d at 332–34 (holding that the CDA barred claims against defendant ISP that allegedly delayed in removing defamatory messages posted by unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter).

District courts in this circuit have reached the same conclusion. *See, e.g.*, *PatentWizard, Inc. v. Kinko's, Inc.*, 163 F. Supp. 2d 1069, 1072 (D.S.D. 2001) (holding that "§ 230 of the Communication[s] Decency Act errs on the side of robust communication and prevents the plaintiffs from moving forward with their claims" that a company that allowed users to access the internet via its computers could be held liable for the actions of one of those users).

The Johnsons cite *Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008), for support. *Craigslist* held that "§ 230(c) as a whole cannot be understood as a general prohibition of civil liability for web-site operators and other online content hosts. . . ." *Id*. at 669. However, while the Seventh Circuit construes § 230(c)(1) to permit liability for ISPs, it limited that liability to ISPs that intentionally designed their systems to facilitate illegal acts, such as stealing music. *Id*. at 670 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003)). Specifically, *Craigslist* held that an ISP *could not* be held liable for allowing third parties to place ads in violation of the Fair Housing Act on its website if the ISP did not induce the third party to place discriminatory ads. *Id.* at 671–72.

The record contains no evidence that InMotion designed its website to be a portal for defamatory material or do anything to induce defamatory postings. We conclude that the CDA provides ISPs like InMotion with federal immunity against state tort defamation actions that would make service providers liable for information originating with third-party users of the service such as the other defendants in this case.

Therefore we decline the Johnsons' invitation to construe § 230(c)(1) as permitting liability against InMotion for material originating with a third party. *See Zeran*, 129 F.3d at 330 (stating that "§ 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits

-10-

seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred").

Because InMotion was merely an ISP host and not an information content provider, the Johnsons' claims against InMotion fail as a matter of law under § 230(c)(1), and the district court properly dismissed the claims.

## B. *Personal Jurisdiction*
### 1. *Kathleen Heineman*

The Johnsons next argue that the district court erred by dismissing the claims against Heineman for lack of personal jurisdiction. The Johnsons maintain that Heineman purposefully directed internet activities at Missouri citizens. The Johnsons also assert that the record establishes personal jurisdiction under the Missouri long arm statute.

Heineman responds that the Johnsons cannot challenge the district court's ruling because they waived any opposition by not filing a timely objection. In the alternative, Heineman argues that the district court correctly ruled it lacked personal jurisdiction over her. According to Heineman, the record does not reflect that she had systematic or continuous contacts with Missouri or, even if she did, that they were aimed or purposefully directed at Missouri.

First, as a threshold question, we address whether the Johnsons may challenge the district court's decision to grant Heineman's motion. Heineman contends that the Johnsons have waived any challenge to the district court's order dismissing her from the lawsuit because they failed to file a timely opposition to the motion to dismiss at the district court.

Heineman filed a motion to dismiss all counts against her, and the Johnsons did not file a timely response. Instead, two weeks after their deadline passed, the Johnsons filed a motion for additional time. The Johnsons then filed a response to Heineman's motion before the district court ruled on the Johnsons' motion for additional time. An affidavit from Susan Johnson was attached with the response. The district court denied the Johnsons' motion for additional time and struck the response from the record. The district court subsequently granted Heineman's motion to dismiss, finding that the Johnsons did not respond in a timely manner, but nevertheless, "out of caution," the district court stated that it considered Susan Johnson's affidavit before ruling on Heineman's motion to dismiss.

"It is a well-established rule that issues not raised in the trial court cannot be considered by this court as a basis for reversal." *Edwards v. Hurtel*, 724 F.2d 689, 690 (8th Cir. 1984) (per curiam). "The primary purpose of the rule is promptly to inform the district judge of possible errors, and thus give the judge an opportunity to reconsider the ruling and make desired changes." *Id*. This rule is followed "in all but exceptional cases where the obvious result would be a plain miscarriage of justice or inconsistent with substantial justice." *Kelley v. Crunk*, 713 F.2d 426, 427 (8th Cir. 1983) (per curiam).

In *Shanklin v. Fitzgerald*, a plaintiff filed certain exhibits without properly authenticating the exhibits. 397 F.3d 596, 601 (8th Cir. 2005). The defendant made a motion to strike the exhibits, and the plaintiff did not oppose. *Id*. The district court granted the motion to strike, and on appeal the plaintiff contended that the district court erred in striking the motion. *Id*. We held that "[a]bsent exceptional circumstances, we cannot consider issues not raised in the district court." *Id*.

The Johnsons distinguish *Shanklin* by pointing out that the district court considered the affidavit from Susan Johnson in making a ruling on the motion to dismiss, while the *Shanklin* court did not review any documents. Also, the Johnsons

did attempt to oppose the motion to dismiss, although in an untimely fashion. In *Shanklin* the plaintiff did not even attempt to file an out-of-time opposition. We find merit in this argument, because the district court acknowledged that it considered some opposition to the motion—Susan Johnson's affidavit—which the Johnsons clearly submitted for the purpose of opposing the motion to dismiss. Therefore, the trial court had an opportunity to "reconsider" the issue of whether to dismiss knowing that the Johnsons opposed dismissal. In fact, in the district court's order, it specifically stated that "out of caution, and because the Court must construe the jurisdictional facts in the light most favorable to the Johnsons, the Court has considered the affidavit of Sue Johnson . . . . " Therefore, we hold that the Johnsons sufficiently preserved their argument for appeal.

Grants of motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) are reviewed de novo. *First Nat'l Bank of Lewisville, Ark. v. First Nat'l Bank of Clinton, Ky.*, 258 F.3d 727, 729 (8th Cir. 2001). "If the District Court does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003).

> In Missouri, to obtain personal jurisdiction over a non-resident defendant, "the plaintiff must make a prima facie showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute, . . . and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process."

*Berry v. Berry (In re Marriage of Berry)*, 155 S.W.3d 838, 840 (Mo. Ct. App. 2005) (quoting *Wray v. Wray*, 73 S.W.3d 646, 649 (Mo. Ct. App. 2002)). "The evidentiary showing required at the prima facie stage is minimal. . . . " *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009) (internal quotations and citation omitted).

-13-

Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, confers jurisdiction to the extent allowed by the Due Process Clause.[4] *State ex rel Deere and Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970). Under this standard, "[p]ersonal jurisdiction exists only if the contacts between the defendant and the forum state are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). In *Aftanase v. Economy Baler Co.*, we set forth five factors courts must consider when determining whether there are sufficient minimum contacts to confer jurisdiction. 343 F.2d 187, 197 (8th Cir. 1965). These factors include: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. *Id*. The first three factors are primary factors, and the remaining two factors are secondary factors. *Id*. The third factor distinguishes whether the jurisdiction is specific or general. *Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 523 n.4 (8th Cir. 1996). We must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995).

---

[4]The statutes states, in relevant part:

1. Any person . . . whether or not a citizen or resident of this state . . . submits . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

    (1) The transaction of any business within this state;
    (2) The making of any contract within this state;
    (3) The commission of a tortious act within this state. . . .

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Davis v. Baylor Univ.*, 976 S.W.2d 5, 12 (Mo. Ct. App. 1998). A court obtains general jurisdiction "against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)). Specific jurisdiction over a defendant is exercised when a state asserts personal jurisdiction over a nonresident defendant that "'has purposefully directed [its] activities at [Missouri] residents'" in a suit that "'arises out of' or 'relates to' these activities." *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

a. *General Jurisdiction*

Heineman's contacts with the State of Missouri—which must be found to be "continuous and systematic" before general jurisdiction is conferred—may be summarized as follows: She purchased cats in Missouri for delivery to the Johnsons; personally delivered cats to the Johnsons in Missouri on two separate occasions; conducted her cat breeding and sale business with the Johnsons, using the Johnsons' website—operated from the Johnsons' location in Unionville, Missouri—for a period of about four years, which ended two years before this lawsuit was initiated; and engaged in numerous telephone conversations and email exchanges with the Johnsons during that four-year period.

Heineman is a citizen and resident of Colorado who sells cats and kittens throughout the United States, and advertises her business on the website www.BoutiqueKittens.com. The Johnsons and Heineman first made contact when Heineman purchased a cat from the Johnsons in late 2001 or early 2002. Around April 2002, they began a business relationship that lasted until March 2006. During this time, Heineman provided the Johnsons administrative assistance with their website,

www.CozyKittens.com. She also purchased advertising space for cats she sold from Colorado on the Johnsons' website, advertising approximately 50 cats thereon. Between 2002 and 2006, Heineman purchased about 16 cats for the Johnsons from breeders throughout the United States. These cats were generally shipped to Colorado, then eventually shipped to Missouri. Heineman never worked as an employee of the Johnsons.

Applying the *Aftanase* factors, *see Lakin*, 348 F.3d at 711, we do not find sufficient contacts between Heineman and Missouri to support general jurisdiction. Heineman did business almost exclusively from her Colorado home, except for infrequent trips to Missouri to deliver cats. *See Johnson*, 444 F.3d at 956–57 (holding that evidence that nonresident party collaborated with a resident and had a publishing relationship with another did not establish general jurisdiction); *see also Helicopteros*, 466 U.S. at 418 ("[W]e hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident [party] in a cause of action not related to those purchase transactions."). Heineman's contact with Missouri was neither continuous nor systematic.

With the Johnsons unable to establish that Heineman had continuous and systematic contacts with Missouri, we turn to the question of specific jurisdiction.

b. *Specific Jurisdiction*

Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Burger King Corp.*, 471 U.S. at 472).

The Johnsons' primary support for specific jurisdiction are two sets of actions that Heineman allegedly undertook—posting defamatory statements on

www.ComplaintsBoard.com and using the trademark "Cozy Kittens" on the website www.BoutiqueKittens.com. The trademark claim will be discussed under a Lanham Act analysis. *See infra*. The question for both sets of actions is whether Heineman "purposefully directed" her internet activities at the State of Missouri.

When considering the sufficiency of internet contacts under a specific jurisdiction analysis, we have found the *Zippo* test instructive. *Lakin*, 348 F.3d at 710–11. In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, the court examined the issue of whether a website could provide sufficient contacts for specific personal jurisdiction. 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). The court created a "sliding scale" to measure the likelihood of personal jurisdiction. *Id*. The scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website. *Id*. The www.ComplaintBoards.com site lands on the "mere posting" end of the scale. Although InMotion represents www.ComplaintsBoard.com as an "interactive" website, users may actually only post information. There is no interaction between users and a host computer; the site merely makes information available to other people. The website's accessibility in Missouri alone is insufficient to confer personal jurisdiction.

There are other ways the Johnsons can obtain specific jurisdiction, including employing the *Calder* effects test. *See Calder v. Jones*, 465 U.S. 783 (1984). "To sustain [their] argument, [the Johnsons] would have to show that [Heineman] knew that 'the brunt of the injury would be felt by [them] in the State in which [they] live [ ] and work[ ]' and intentionally targeted the forum state." *Steinbuch*, 518 F.3d at 586 (quoting *Calder*, 465 U.S. at 789–90).

The "effects" test, therefore, provides that

a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's

acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004) (internal quotations and citation omitted). We have stated that this test "allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991) (internal quotations and citation omitted). Heineman's alleged acts were not so performed.

The Johnsons allege that Heineman stated on www.ComplaintBoards.com that "Sue Johnson and Cozy Kittens operated from Unionville, Missouri, where they killed cats, sold infected cats and kittens, brutally killed and tortured unwanted cats and operated a 'kitten mill' in Unionville, Missouri." Although we accept this allegation as true,[5] alone, it fails to show that Heineman uniquely or expressly aimed her statements at Missouri. The statements were aimed at the Johnsons; the inclusion of "Missouri" in the posting was incidental and not "performed for the very purpose of having their consequences" felt in Missouri. There is no evidence that the www.ComplaintsBoard.com website specifically targets Missouri, or that the content of Heineman's alleged postings specifically targeted Missouri.

Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. In *Dakota*, we

___

[5]There is no copy of any post from Heineman, defamatory or otherwise, in the record, although at this summary judgment stage we construe the evidence in the light most favorable to the Johnsons. *Semple v. Federal Exp. Corp.*, 566 F.3d 788, 791 (8th Cir. 2009).

-18-

declined to grant personal jurisdiction solely on the basis of forum state effects from an intentional tort. *Id.* at 1391 ("In relying on *Calder*, we do not abandon the five-part [*Aftanase*] test . . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged."). We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction. *See Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam). As explained, *supra*, there are no additional contacts between Heineman and Missouri to justify conferring personal jurisdiction.

Posting on the internet from Colorado an allegedly defamatory statement including the name "Missouri" in its factual assertion does not create the type of substantial connection between Heineman and Missouri necessary to confer specific personal jurisdiction.

### c. *Lanham Act Claims*

The Johnsons also challenge the district court's denial of jurisdiction for the Johnsons' Lanham Act claim. The Johnsons allege that Heineman violated the Lanham Act, 15 U.S.C. § 1051 *et seq.*,[6] by using the words "Cozy Kittens and Cuddly Cats" to advertise her cat breeding business on www.BoutiqueKittens.com. As noted, Heineman denies ownership of this website, but for purposes of our review of a dismissed count, we assume that Heineman owns the site in question.

Here, we do not decide the viability of the Johnsons' Lanham Act claim on the merits, only whether the district court had jurisdiction to decide the claim. The

---

[6]The Lanham Act governs the use of federal trademarks. *Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005) ("The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services.")

Missouri long-arm statute confers jurisdiction to Missouri courts for torts committed *within* Missouri. *See* Mo. Rev. Stat. § 506.500.

Infringing upon a trademark, as a tort, may be grounds for personal jurisdiction under Missouri's long-arm statute. *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.*, 96 F. Supp. 2d 919, 921 (E.D. Mo. 2000). However, the same "minimum contacts" analysis applies to determine if the allegedly tortious act was committed within Missouri. *Id.* Heineman, as discussed, does not have sufficient contacts to grant general personal jurisdiction. The Johnsons argue that Heineman sells cats and kittens throughout the United States, including in the State of Missouri via advertising on www.BoutiqueKittens.com, thus creating specific personal jurisdiction. However, under *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant. *Zippo*, 952 F. Supp. at 1125–26. Although www.BoutiqueKittens.com may be characterized as interactive, there is no evidence in the record that Heineman engaged in any transaction or exchange of information with a Missouri resident via www.BoutiqueKittens.com, or that a Missouri resident ever accessed the website. We decline to confer personal jurisdiction based on only the possibility that a Missouri resident had contact with Heineman through www.BoutiqueKittens.com.

Similarly, the Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim. For these reasons, as well as the reasons stated *supra*, Part II.B.1, we hold that Heineman does not have sufficient minimum contacts with Missouri and affirm the district court's decision to dismiss the Lanham Act claims against Heineman for lack of personal jurisdiction.

Because we find there was no personal jurisdiction, we do not reach Heineman's other issues related to service and venue.

## 2. *Melanie Lowry*
### a. *Personal Jurisdiction*

The Johnsons also contend that the district court erred by dismissing their claims against Melanie Lowry for lack of personal jurisdiction because the web activities of Lowry were purposefully directed at the citizens of the State of Missouri. We address this issue with an analysis similar to the one completed above for Heineman.

The only evidence in the record relating to Lowry is an affidavit she attached to her motion to dismiss. In it, Lowry claimed that she has never been to Missouri, does not own any property in Missouri, does not have any bank accounts or telephone listings in Missouri, has never paid taxes in Missouri nor insured a risk in Missouri, and has never knowingly, regularly or continuously transacted business in the State of Missouri. Her affidavit also states that she has never done business with the Johnsons, does not know them, and has only spoken to Susan Johnson one time on the telephone—a call that Johnson initiated. The evidence supporting systematic and continuous contacts between Lowry and Missouri is thus even weaker than that for Heineman. Again applying the *Aftanase* factors we hold that the district court did not have general jurisdiction over Lowry.

The court also did not have specific jurisdiction over Lowry. Lowry's alleged activities related to www.ComplaintsBoard.com are similar to Heineman's, except that Lowry did not include any statement related to or mentioning the State of Missouri. No statement of any kind by Lowry was purposefully directed at Missouri. We affirm the district court's decision to dismiss the Johnsons' claims against Lowry for lack of personal jurisdiction.

-21-

b. *Default Judgment*

Finally, the Johnsons argue that the district court abused its discretion or erred by vacating the Missouri state court default judgment against Lowry under Federal Rule of Civil Procedure 60(b). The Johnsons specifically challenge the district court's lack of a showing of good cause.

The district court, "for good cause shown," "set aside" the default judgment against Lowry as part of its order granting Lowry's motion to dismiss for lack of personal jurisdiction. Thus, while no findings were made or specific reasons given for setting aside the judgment, it is reasonable to surmise that the district court set aside the default judgment as void because the district court found that Missouri courts lacked personal jurisdiction over Lowry.

The default judgment was filed on September 22, 2008, and Lowry filed a motion to set aside the judgment on November 12, 2008. Lowry did not reference a rule of civil procedure in her motion, but Lowry is a pro se litigant and therefore we construe her pleadings broadly. *See Smith v. Hundley*, 190 F.3d 852, 855 n.7 (8th Cir. 1999) (holding that pro se pleadings are afforded a liberal construction). Because Lowry specifically stated that "this is my motion to set aside the default judgment" and in the same motion argued that the court did not have personal jurisdiction, we will view her motion as a Rule 60(b)(4) motion. *See Baldwin v. Credit Based Asset Servicing and Securitization*, 516 F.3d 734, 737 (8th Cir. 2008) (characterizing a pro se motion that did not specify a particular rule of civil procedure as a Rule 60(b)(4) motion because the motion stated that the court did not have personal jurisdiction).

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b)(4) provides in relevant part that "the court may relieve a party . . . from a final judgment [if] . . . the judgment is void[.]" Fed. R. Civ. P. 60(b)(4). "A judgment is void if the rendering court lacked jurisdiction or acted in a manner inconsistent with due

process." *Baldwin*, 516 F.3d at 737 (internal quotations and citation omitted). "Although we have sometimes said that relief from a judgment under Rule 60(b) is an extraordinary remedy left to the discretion of the district court, relief from a judgment that is void under Rule 60(b)(4) is not discretionary." *United States v. Three Hundred Fifty-Three Thousand Six Hundred Dollars, in United States Currency*, 463 F.3d 812, 813 (8th Cir. 2006). "Thus, while Rule 60(b) dispositions are generally reviewed for an abuse of discretion . . . an order [granting] relief pursuant to Rule 60(b)(4) is reviewed *de novo*." *Id.* (internal citation omitted).

This is not a case where Lowry lost on the merits, failed to appeal, and belatedly attempted to avoid the judgment with a Rule 60(b)(4) motion. *Cf. Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997) ("A party may not use a Rule 60(b)(4) motion as a substitute for a timely appeal. In other words, if a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal.") (internal citations omitted). Rather, Lowry challenged jurisdiction from the inception of this case. The district court found that Lowry could not be subjected to personal jurisdiction in Missouri. Although we reviewed that decision on the merits in this opinion, *see supra*, Part II.B.2.a, for purposes of review of the district court's decision to set aside the default judgment, we do not consider the underlying decision; we are confined to determining only whether the district court erred in granting Lowry's Rule 60(b)(4) motion. *See Three Hundred Fifty-Three Thousand Six Hundred Dollars, in United States Currency*, 463 F.3d at 814. Because the district court did not err in granting Lowry's Rule 60(b)(4) motion when it found personal jurisdiction lacking we affirm the court's decision to set aside Lowry's adverse judgment.

## III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____