# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2663

_____

Richard "Bud" Steen; Lloydene Steen

*Plaintiffs - Appellants*

v.

Robert Murray, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: June 10, 2014
Filed: October 21, 2014

_____

Before LOKEN, BEAM, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

When lender Farm Credit Services threatened to foreclose on his farm in Emerson, Iowa, Richard "Bud" Steen retained Lamson, Dugan & Murray, LLP, an Omaha law firm, and Robert Murray, a member of the firm. To generate funds to repay the loan, Steen and his wife Lloydene agreed to sell part of the farm to AGR-Keast, an Iowa general partnership. At Steen's request, Murray, assisted by Ryan Boe

of the Lamson law firm, prepared agreements by which AGR-Keast would buy 80 acres of the Steens' farm and lease another 331 acres for six years, with an option to purchase the leased property. After executing the agreements, the parties closed the transaction at the Lamson firm's Omaha office in April 2003. In July 2012, after state court litigation with AGR-Keast, the Steens filed this action in the Southern District of Iowa against Murray, Boe, and the Lamson law firm, alleging that defendants breached a contract for legal services when they "drafted an unrestricted option in favor of" AGR-Keast instead of "a first option to purchase or a first right of refusal." The Steens sought compensatory damages for litigation costs and the loss of their land, plus punitive damages for defendants' allegedly unethical failure to disclose that Murray also represented AGR-Keast at the time of the 2003 agreements.

On defendants' motion, the district court[1] transferred the legal malpractice suit to the District of Nebraska under 28 U.S.C. § 1406(a), ruling that the Southern District of Iowa was an improper venue. In the District of Nebraska, defendants moved for judgment on the pleadings, asserting the claims were time-barred under Nebraska law. The Steens moved to retransfer the case to the Southern District of Iowa. Alternatively, they urged the Nebraska court to treat the case as transferred under 28 U.S.C. § 1404(a), apply Iowa law, and conclude the suit was timely filed under the applicable Iowa statute of limitations. The district court[2] denied the Steens' motion to retransfer and, applying the Nebraska statute of limitations, concluded the malpractice claims were time-barred. The Steens appeal dismissal of their complaint with prejudice, arguing the claims were timely under Iowa law because the case was properly venued in the Southern District of Iowa and therefore Iowa law applies, or

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

because the district court erred in applying the Nebraska statute of limitations under Nebraska choice-of-law principles. Reviewing these issues *de novo*, we affirm.

## I. Framing the Issues on Appeal.

**A.** Defendants provided the challenged legal services in early 2003. The Steens allege they first discovered the alleged malpractice in October 2008. The complaint was filed in July 2012. Under Nebraska law, a legal malpractice claim is time-barred unless brought within two years after the act or omission "providing the basis for" the claim, or, if not discovered within that period, within one year from the discovery of facts which would reasonably lead to discovery of the claim. Neb. Rev. Stat. § 25-222; see Guinn v. Murray, 837 N.W.2d 805, 816 (Neb. 2013). The Steens do not appeal the district court's ruling that their claim was time-barred under Nebraska law. Rather, they contend the claim was not time-barred under applicable Iowa law.

Under Iowa law, legal malpractice of the type alleged is a claim for breach of an unwritten oral services contract that is subject to a five-year statute of limitations. See Venard v. Winter, 524 N.W.2d 163, 165-66 (Iowa 1994); Iowa Code Ann. § 614.1(4). The Steens argue this statute of limitations applies and did not begin to run until they discovered the alleged malpractice in 2008, within five years of the filing of their complaint. The district court did not address whether the claim was timely under Iowa law. Thus, the choice of law issue is at the core of the appeal. That issue, as we will explain, brings into play the venue dispute.

**B.** In the absence of a special venue statute, 28 U.S.C. § 1391(b) governs where a federal civil action may be venued. Venue in this case turns on § 1391(b)(2), which provides that a civil action may be brought in:

       (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

Two statutes define circumstances when a district court may transfer venue to another federal district. For the convenience of parties and witnesses, a court "may transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). A case may be transferred under § 1404(a) only when venue is proper in the transferor *and* transferee forums. By contrast, if a case is brought in a district where venue is improper under § 1391(b), the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

When a case is transferred under § 1404(a), the transferee district court applies the choice-of-law rules of the transferor court's State. Ferens v. John Deere Co., 494 U.S. 516, 531 (1990). But when a diversity case is transferred under § 1406(a) because venue in the transferor court was improper, "§ 1406(a) transfer calls for application of the law of the transferee court," beginning with its choice-of-law rules. Wisland v. Admiral Beverage Co., 119 F.3d 733, 736 (8th Cir. 1997), followed in Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH, 495 F.3d 582, 588-89 (8th Cir. 2007). In this case, the Southern District of Iowa transferred the case under § 1406(a), concluding venue was improper in Iowa. The District of Nebraska denied the Steens' motion to retransfer the case, applied Nebraska choice-of-law principles, as Wisland required, and concluded the claim was time-barred under Nebraska law.

**C.** The Southern District of Iowa order transferring the case to another district *within this circuit* was a non-appealable interlocutory order, not subject to mandamus review, because it did not "in any way impair or defeat the jurisdiction of this Court

-4-

to review any appealable order or judgment which eventually may be entered in the case." Carr v. Donohoe, 201 F.2d 426, 428-29 (8th Cir. 1953); accord Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383-84 (1953). The District of Nebraska order denying the Steens' motion to retransfer was reviewable on appeal from that court's final order of dismissal and was included in the Steens' notice of appeal. But rulings on motions to retransfer, like discretionary decisions to transfer for the convenience of the parties under § 1404(a), are reviewed under a deferential abuse-of-discretion standard. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (courts "should be loathe to [order retransfer] in the absence of extraordinary circumstances"); Technitrol, Inc. v. McManus, 405 F.2d 84, 90 (8th Cir. 1968); see generally 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3855 (4th ed. 2013).

Unlike a § 1404(a) transfer order, the Southern District of Iowa's § 1406(a) transfer was based upon its interpretation of § 1391(b)(2), a question of federal law. Leroy v. Great W. United Corp., 443 U.S. 173, 183 n.15 (1979). We review a decision that venue was improper under § 1391(b) *de novo*. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). So what do we review in this case, the transfer order or the denial of retransfer, and what is our standard of review, *de novo* or abuse of discretion? Suffice it to say our extensive research unearthed no clear precedent resolving these questions. But defendants concede on appeal that interpretation of the venue statute is a question of law we review *de novo*, and they defend the Southern District of Iowa's ruling on the merits. That is consistent with the review we conducted in Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196 (8th Cir. 1990), and we will proceed accordingly. However, the question we consider in this case is not whether to retransfer the case to the Southern District of Iowa, the relief granted in Knowlton. Rather, we review the Southern District of Iowa's venue decision, *de novo*, solely for the purpose of determining whether the District of Nebraska applied the proper State's statute of limitations in dismissing the action.

## II. The § 1391(b)(2) Issue.

Under § 1391(b)(2) as amended in 1990, "venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). "Under the amended statute, we no longer ask which district among two or more potential forums is the 'best' venue." Setco Ent. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994). Citing Woodke as "controlling Eighth Circuit case law," the Southern District of Iowa ruled, "in deciding whether a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, the Court must focus only on Defendants' alleged wrongful activity."

Applying that rule, the court concluded that all of defendants' alleged wrongful activity had occurred in Nebraska. Murray and Boe lived in Nebraska, worked out of the firm's only office in Omaha, and were not licensed to practice law in Iowa. On March 3, 2003, Steen called Murray in his Omaha office to advise of a tentative agreement with AGR-Keast. Murray failed to disclose his representation of AGR-Keast. He immediately called the Farm Credit Services representative in Lincoln, Nebraska, with whom he had discussed the Steens' predicament. Farm Credit Services agreed to give the Steens twenty days to close the deal with AGR-Keast and apply the sale proceeds to the loan. Murray and Boe then drafted the agreements entirely in Nebraska. The court acknowledged the Steens' contention that defendants performed legal services for Iowa residents, the Steens suffered injury in Iowa, and the land was located in Iowa. These facts, the court explained, may have established personal jurisdiction over defendants in the Southern District of Iowa but were "irrelevant to the Court's venue analysis" under Woodke.[3]

---

[3]A defendant may be subject to personal jurisdiction in a venue that is nonetheless improper because a substantial part of the events or omissions giving rise to the claim did not occur in that district. See Maybelline Co. v. Noxell Corp., 813 F.2d 901, 903-05 (8th Cir. 1987).

On appeal, the Steens argue that we adopted "a more expansive interpretation of the venue statute" in Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003), a subsequent decision we are free to follow if it conflicts with Woodke's focus on the defendant's alleged wrongful activity. The contention that we may follow the later of two inconsistent Eighth Circuit precedents is flatly contrary to our recent en banc decision in Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). Moreover, contrary to the Steens' contentions, our decisions in Setco Enterprises and Pecoraro were not inconsistent with the principle adopted in Woodke. In Setco, we held that venue was proper in the Western District of Missouri because plaintiff's fraud claim was based in large part on defendant's alleged violation of a bankruptcy court order issued in that District. 19 F.3d at 1281. In Pecoraro, we upheld venue in the District of Nebraska because defendant's alleged tortious acts in that District were a substantial part of plaintiff's claims. 340 F.3d at 562.

The Steens further note that Woodke's focus on defendants' wrongful activity "has been questioned" by district courts in this and other circuits. That may be true, but more telling in our view are decisions of our sister circuits agreeing with Woodke "that [§ 1391(b)] protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (quoting Woodke, 70 F.3d at 985); accord Daniel v. Amer. Bd. of Emergency Med., 428 F.3d 408, 431-34 (2d Cir. 2005). The district court correctly concluded that Woodke is controlling Eighth Circuit authority. We do not read Woodke as holding that a court in applying § 1391(b)(2) may *only* consider the defendant's allegedly wrongful activities. But the court's *focus* must be on relevant activities of the defendant in the forum state, not on the effect of those activities on the plaintiff in the forum state.

Alternatively, the Steens argue that venue was proper in the Southern District of Iowa under Woodke. Though the question is not free from doubt, we disagree. Plaintiff in Woodke alleged that defendants had advertised plaintiff's brand of trailers

under defendants' trademark -- a "reverse passing off" claim under the Lanham Act. Though the offending advertisement was not circulated in Iowa, Woodke argued venue was proper in the Northern District of Iowa, where he lived, "because that is the location of the ultimate effect of the passing off." 70 F.3d at 985. We held that the Northern District of Iowa was an improper venue because defendants did not commit passing off in that District, even if Woodke resided and was injured there. Though defendants manufactured the trailers in that district, "a necessary event, in a causal sense, to an attempt to pass them off," the manufacturing was not "an event giving rise to Mr. Woodke's claim because it was not itself wrongful." Id. at 985-86.

Here, as in Woodke, the Steens claim a wrongful act committed by defendants outside the Southern District of Iowa. Murray was retained to work with a representative of Farm Credit Services in Nebraska to resolve the Steens' credit problem and avoid foreclosure. Richard Steen called Murray in Nebraska to notify him of an agreement to sell part of the farmland to AGR-Keast. The alleged malpractice -- drafting option and purchase agreements that improperly favored AGR-Keast, either negligently or by design -- was entirely performed in Nebraska. The Steens do not allege, and Murray and Boe specifically deny, traveling to Iowa in connection with the negotiation or execution of the agreements.

The Steens argue that venue was proper in Iowa under § 1391(b)(2) because their claims would not exist if defendants had not entered into an attorney-client relationship to represent Iowa clients in matters controlled by Iowa law, while failing to disclose the unethical dual representation of AGR-Keast. But these events did not "give rise to" the Steens' claims. True, defendants could not have committed malpractice had they refused to represent the Steens. But the decision to represent the Steens was not the alleged malpractice. Rather, the Steens claim punitive damages for subsequent malpractice based on Murray's alleged failure to disclose a conflict of interest. As we explained in Woodke, an event does not "give rise to the

claim" simply because the alleged wrongful conduct would have been impossible without the event. See 70 F.3d at 985-86.

The Steens further argue that the Southern District of Iowa was a proper venue because their farmland was located there, noting that § 1391(b)(2) provides for venue in "a judicial district in which . . . a substantial part of property that is the subject of the action is situated." But cases have construed this provision "to apply only to suits involving property disputes or in rem actions." Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011) (quotation omitted). Here, defendants' alleged malpractice in drafting contracts was "the subject of" the action. The malpractice affected the Steens' farmland, but this was not a property dispute. Woodke rejected the notion that venue lies in a district simply because defendants' wrongful conduct caused effects there. 70 F.3d at 985.

Because the malpractice -- the alleged wrongful activity -- occurred exclusively in the District of Nebraska, neither district court erred in concluding that the Southern District of Iowa was an improper venue. See Wisland, 119 F.3d at 736.

## III. The Choice of Law Issue.

The Steens argue that, even if venue was improper in the Southern District of Iowa, the District of Nebraska erred in applying Nebraska's statute of limitations governing malpractice actions, rather than Iowa's. As previously explained, in a diversity case transferred under § 1406(a), the transferee court, and this court on appeal, apply the choice-of-law rules of the transferee forum. Thus, this issue is governed by Nebraska choice-of-law principles. Eggleton, 495 F.3d at 586-88.

Historically, courts in Nebraska, as in many States, applied the Nebraska statute of limitations to an action venued in Nebraska, even if the law of another State

governed the parties' substantive rights.[4]   As the Supreme Court of Nebraska explained in Whitten v. Whitten, 548 N.W.2d 338, 340 (Neb. 1996), "procedural matters are dictated by the law of the forum. . . .  A statute of limitations does not create or extinguish a right, but only places a limitation on a remedy which may be tolled or waived."[5]  More than twenty years before the decision in Whitten, we applied this general Nebraska conflict-of-laws principle in concluding that a Nebraska federal court must apply the five-year Nebraska statute of limitations, rather than the ten-year Iowa statute of limitations, in a breach of contract action governed by Iowa substantive law.  Player Pianette, Inc. v. Dale Elecs., Inc., 478 F.2d 336, 336-37 (8th Cir. 1973), followed in Grand Island Express Corp. v. Timpte Indus., Inc., 28 F.3d 73,74 (8th Cir. 1994).

The Steens argue that the Supreme Court of Nebraska would apply the "most significant relationship" test of § 145 of the Restatement (Second) of Conflict of Laws, in lieu of the Whitten rule.  Lacking supporting authority from that Court, they rely on our decision in FDIC v. Nordbrock, 102 F.3d 335 (8th Cir. 1996).  In Nordbrock, the FDIC as receiver for an Illinois bank sued a Nebraska debtor in Nebraska federal court to collect a promissory note more than six years after the claim accrued.  The suit was governed by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, which provided that the statute of limitations was "the longer of (I) the 6-year period beginning on the date the claim accrues; or (II) the period applicable under State law."  12 U.S.C. § 1821(d)(14)(A)(i).  We held the FDIC's claim timely under § 1821(d)(14)(A)(i), applying the Illinois ten-year statute

---

[4]For the impact of this rule in diversity cases, see generally Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 504 (2001).

[5]In 2006, the Nebraska Legislature enacted the Uniform Conflict of Laws Limitation Act, which provides that a claim accruing after July 14, 2006, is subject to the statute of limitations of the State upon whose substantive law the claim is based.  Neb. Rev. Stat. §§ 25-3203, 25-3206.  Because the Steens' claim accrued before 2006, the traditional rule applies.

-10-

of limitations, rather than the federal six-year limitations period, because the Supreme Court of Nebraska would apply the "substantial relationship" test from § 142 of the Restatement (Second) of Conflict of Laws (1989) to this "unique factual setting," rather than the general rule in Whitten "that the forum will apply its own statue of limitations." 102 F.3d at 339.

The Steens' reliance on Nordbrock is misplaced. First, that case was governed by federal law, including a statute of limitations that *borrowed* an applicable state statute if it extended the limitations period. This casts doubt on whether Nordbrock was applying Nebraska choice-of-law rules or federal common law in determining what state law to apply under the federal statute. See id. at 340 (Loken, J., concurring). Second, in Nordbrock we emphasized that a unique factual setting justified departure from the general rule in Whitten. By contrast, in this diversity case, no government institution stands to lose hundreds of thousands of dollars of depositors' money, and no statute suggests the limitations period should err on the side of preserving the claim. In other words, while this dispute is significant to the parties, no exceptional circumstances are present. Finally, if the Steens are correct and Nordbrock stands for the proposition that Whitten is not the controlling Nebraska choice-of-law decision, our en banc decision in Mader requires that our panel follow our earlier contrary rulings in Player Piannette and Grand Island Express.

For these reasons, we conclude the district court correctly applied the Nebraska legal malpractice statute of limitations in ruling that the Steens' claim was time-barred. Accordingly, the judgment of the district court is affirmed.

_____

-11-