# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3672

_____

Pangaea, Inc.,                          *
                                        *
    Plaintiff / Appellant,              *
                                        *
    v.                                  *  Appeal from the United States District
                                        *  Court for the Western District of
The Flying Burrito LLC;                 *  Arkansas.
Robert Moore,                           *
                                        *
    Defendant / Appellees.              *

_____

Submitted:  March 15, 2011
Filed:  August 1, 2011

_____

Before LOKEN and COLLOTON, Circuit Judges, and NELSON,* District Judge.

_____

NELSON, District Judge.

The issue in this diversity action is whether a federal court in Arkansas has personal jurisdiction over an Iowa citizen and an Iowa limited liability company where the contact with Arkansas was a single meeting by the parties in Arkansas. Appellant Pangaea, Inc. (Plaintiff), the owner of the federal trademark "The Flying

_____

*The Honorable Susan Richard Nelson, United States Judge for the District of Minnesota, sitting by designation.

Burrito Company," appeals the district court's[1] dismissal of its trademark infringement action for lack of personal jurisdiction.[2] Plaintiff argues that the district court had jurisdiction over The Flying Burrito L.L.C. ("Flying Burrito") and Robert Moore (Defendants) because Moore and another business representative had traveled from Iowa, where their restaurant was located, to Arkansas on one occasion, in 2004, for the express purpose of obtaining permission from Plaintiff to use its trademark. Although acknowledging this only contact, Plaintiff also asserts that the district court erred in denying Plaintiff's request to conduct jurisdictional discovery. The district court dismissed the action for lack of personal jurisdiction, concluding that the contact with Arkansas was insufficient to permit the exercise of personal jurisdiction consistent with the Due Process Clause. We affirm.

Plaintiff, an Arkansas corporation, operates a restaurant named "The Flying Burrito Company" in Fayetteville, Arkansas. Its federal service mark of the same name was registered on January 11, 2005, with "first use" and "in commerce" dates of May 31, 2003. Defendant, Flying Burrito LLC, a limited liability company organized under Iowa law, operated a restaurant in Ames, Iowa under the name "The Flying Burrito." The Iowa restaurant opened in August 2004 and Defendant Robert Moore managed the restaurant from that date until August 2007. Moore is a citizen of Iowa.

Shortly after the Iowa restaurant opened, Matthew Goodman, the owner of the Iowa restaurant, became aware of Plaintiff's then-pending federal trademark application, which had been filed on January 7, 2004. Sometime in 2004 (either in

---

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

[2]Because the parties' restaurants were identically named "The Flying Burrito," we refer to the parties by the plaintiff and defendant designations in the district court action, to avoid confusion.

the first three months of 2004, according to Plaintiff, or shortly after October 19, 2004, according to Defendants), Goodman and Moore traveled to Arkansas to meet with Plaintiff's owners seeking permission to use their trademark. Although it is clear that they did not obtain any such agreement, the parties dispute whether Plaintiff's owners expressly told Defendants that they could not use their mark. In any event, Defendants continued to use "The Flying Burrito" name.

On November 18, 2008, after demanding that Defendants cease use of "The Flying Burrito" name, Plaintiff commenced this diversity action for trademark infringement in the Western District of Arkansas. The district court granted Defendants' motion to dismiss for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). We review that ruling *de novo*. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).

When jurisdiction is challenged on a pretrial motion to dismiss, the "nonmoving party need only make a prima facie showing of jurisdiction." Dakota Indus., Inc., v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Where, as here, "the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." Id. (internal citations omitted). Because we conclude that Defendants have insufficient contacts with Arkansas to subject them to personal jurisdiction there consistent with due process, we affirm.

In a diversity suit, a federal court may exercise jurisdiction over a nonresident defendant only if the requirements of the forum state's long-arm statute are met and the exercise of jurisdiction comports with due process. See Burlington, 97 F.3d at 1102. Arkansas's long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by constitutional due process. Id.; Ark. Code Ann. § 16-4-101.

In order to satisfy the due process clause, a defendant must have "minimum contacts [with the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "contacts" with the forum state generally must not arise due to mere fortuity, but must arise because the defendant has "purposefully availed" itself of the privilege of conducting activities in the state. Hanson v. Denckla, 357 U.S. 235, 253 (1958); Digi-Tel Holdings, Inc. v. ProTeq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

"[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." J. McIntyre Mach., Ltd. v. Nicastro, — U.S. —, 131 S. Ct. 2780, 2787 (2011) (plurality opinion). However, when a defendant "purposefully avails itself of the privilege of conducting activities within" a state, Hanson v. Denckla, 357 U.S. 235, 253 (1958), a state's exercise of jurisdiction over that defendant is proper "'in a suit arising out of or related to the defendant's contacts with the forum.'" J. McIntyre, 131 S. Ct. at 2787-88 (plurality opinion) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." Id. at 2789 (plurality opinion).

"The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010).[3] Specific jurisdiction may be conferred over causes of action arising from or

---

[3]General jurisdiction, which "refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," Burlington, 97 F.3d at 1103, requires an examination of whether the defendant's contacts with the forum are "continuous and systematic." See

related to a defendant's actions within the forum state. Burlington, 97 F.3d at 1103; Lakin v. Prudential Securities, Inc., 348 F.3d 704, 707 (8th Cir. 2003) (concluding that cause of action in that case was "entirely unrelated to [defendant's] activities in [the forum]"). Specific jurisdiction, like general jurisdiction, may be justified when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum,"'in a suit arising out of or related to the defendant's contacts with the forum.'" J. McIntyre, 131 S. Ct. at 2787-88 (plurality opinion) (quoting Helicopteros, 466 U.S. at 414 n.8); see also Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

This case involves only a question of specific jurisdiction, as Plaintiff apparently concedes that Defendants' single contact with the Arkansas forum during the 2004 business trip to Fayetteville was neither continuous nor systematic. Under these facts, such contact is insufficient to support the exercise of general jurisdiction. We therefore turn to the question of specific jurisdiction. Specific jurisdiction may be established where the claim "arises out of" or "relates to" a defendant's contacts with the forum. See J. McIntyre, 131 S. Ct. at 2787-88 (plurality opinion). Thus, we must consider whether the suit arises out of or is related to the Defendants' contacts with the forum and whether Defendants engaged in activities in the forum that "reveal an intent to invoke or benefit from the protection of its laws." See id. at 2791 (plurality opinion).[4]

---

Helicopteros, 466 U.S. at 414-15 & n.9 (introducing distinction between "general" and "specific" jurisdiction and concluding that Columbian corporation's contacts with Texas did not rise to level required for "general jurisdiction").

[4]Plaintiff complains that the district court failed to apply the Eighth Circuit's five-factor test used in evaluating personal jurisdiction. Traditionally, when evaluating a challenge to personal jurisdiction, we have considered the following five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the defendant's contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum

Defendants reside in Iowa and their sole relevant contact with Arkansas was the 2004 meeting in Fayetteville. "Infringing upon a trademark, as a tort, may be grounds for personal jurisdiction under [a state's] long-arm statute." Johnson v. Arden, 614 F.3d 785, 797 (8th Cir. 2010).

Here, the trademark infringement claim is with respect to a restaurant business. While Plaintiff sells "goods" in the form of food, this physical product (unlike, for example, a brand-name shoe) is presumably neither itself marked nor distributed in the forum state. Insofar as the usual test for "passing off" infringing goods could apply in this context, the injury would occur either "'where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's'" or "where the plaintiff suffers the economic impact." Dakota Indus., 946 F.2d at 1387 (noting two theories as to where trademark claim arises, but not choosing between them).

The district court here ruled that Plaintiff's trademark infringement claims did not arise from or relate to the single meeting between the parties in Arkansas. Rather, the alleged infringement began before this meeting, when Defendants established the Ames, Iowa restaurant, and continued thereafter, "seemingly unaffected by the meeting." (App. at 115-16.) The court further explained that it saw "no connection between the parties' meeting in Arkansas and the cause of action" because the "claimed injuries arose out of Defendants' operation of their restaurant in Ames Iowa." (Id. at 116.) "The infringement took place in and around Defendants' Iowa restaurant and was directed at Iowa residents." (Id.) Thus the alleged infringement

_____

for its residents; and (5) the convenience of the parties. Burlington, 97 F.3d at 1102 (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)). A review of the district court's decision, however, demonstrates that the court correctly stated and applied the familiar five-factor test. In any event, the "test is not to be mechanically applied," Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987), and we would reach the same result under the five-factor test.

of the service mark was "localized" in that Defendants operated a restaurant only in Ames, Iowa, and that business apparently did not overlap with Plaintiff's Arkansas customer base.

The district court correctly analyzed trademark infringement for purposes of personal jurisdiction. In Johnson, we found that the plaintiffs failed to prove that the alleged trademark infringement was uniquely or expressly aimed at Missouri, the forum state. 614 F.3d at 797-98. Moreover, because there was no evidence in the record that a Missouri resident ever even accessed the website in question, "we decline[d] to confer personal jurisdiction based on only the possibility" of a contact with the forum. Id. at 797. Here, we see no evidence that the alleged infringement itself extended into Arkansas.

Thus the district court was correct in concluding that the alleged infringement did not "arise out of" Defendants' trip to Arkansas. The Defendants' trip to Arkansas–and their failure to obtain permission to use the mark–did not cause or otherwise precipitate the alleged infringement. In fact, Defendants' sole contact with Arkansas apparently was in an attempt to avoid any trademark infringement.

Rather, the alleged infringement occurred because Defendants used the "The Flying Burrito" mark at their Iowa restaurant. Such infringement could "arise out of" a contact with Arkansas had Defendants opened a restaurant in Arkansas. The fact that Defendants maintained a website advertising their Iowa restaurant cannot be viewed as intentionally targeting customers in Arkansas, considering the distance between Ames and Fayetteville, and the unlikelihood that customers seeking food in the Fayetteville area would be confused by the website for the Ames restaurant, much less inclined to travel that far out of their way. Accordingly, it is difficult, at best, to conclude that the fact that the Iowa restauranteurs failed to obtain permission to use Plaintiff's trademark could constitute the cause of the injury resulting from the appellees' continued use of that mark in Iowa.

Moreover, the single trip to Arkansas is not sufficiently "related to" the claim to support specific personal jurisdiction, at least not where it is Defendants' sole contact with the forum. Cf. Digi-Tel Holdings, 89 F.3d at 523 (affirming dismissal for lack of specific jurisdiction where defendant sent letters and faxes and made telephone calls to forum and shipped four samples to forum). In cases where we have found specific personal jurisdiction, we have considered other additional contacts beyond the fact that defendants had traveled to the forum. E.g. Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1433-34 (8th Cir. 1995) ("The numerous mail and telephone contacts coupled with the physical visits by [a director and shareholder of defendant], which were all related to the contract, [satisfy purposeful availment for specific jurisdiction].").

More precisely, in Austad Co. v. Pennie & Edmonds, we addressed whether a New York law firm's representation of a South Dakota client in litigation conducted in Maryland supported jurisdiction in South Dakota over the law firm with respect to its handling of that litigation. The firm "sent an associate and a law clerk to [plaintiff's] facilities in South Dakota to review and copy documents and gather information needed to answer interrogatories," a visit that lasted three days and was the law firm's only physical contact with the forum. 823 F.2d 223, 225 (8th Cir. 1987). We observed that the plaintiff asserted other contacts, including "numerous phone calls between New York and [the forum], the use of courier services, monthly billings mailed to [the forum], and checks paid by a [forum] bank." Id. at 226. We concluded that jurisdiction was lacking even though such contacts likely established an attorney-client relationship. Id. Even though the three-day trip to the forum plainly concerned the Maryland litigation that plaintiff alleged was mishandled by the defendant law firm, there was no allegation that the associate's discovery tasks were the basis for the malpractice claim and therefore the cause of action did not "arise out of" that contact with the forum. In short, a single physical contact that only relates to the claim is not enough.

We recognize that in Bell Paper Box, Inc. v. U.S. Kids, Inc., in a breach of contract action regarding the manufacture of envelopes and portfolios conforming to the buyer's specifications, we distinguished Austad, but on the basis that

> the subject matter of this dispute occurred entirely within the forum state. Not only did a representative of U.S. Kids visit South Dakota, but the contract was performed in its entirety in South Dakota as well. The portfolios and envelopes were produced in South Dakota, leading to the necessity of [the buyer's agent's] visit to South Dakota to inspect the initial run to see that it was satisfactory. The final product was shipped [to South Dakota].

22 F.3d 816, 819 (8th Cir. 1994). Although we acknowledged that "the physical contacts . . . are admittedly slight," we clarified that the defendant had purposefully directed its activities to the forum because (1) an agent of defendant visited the forum to inspect the goods; (2) extensive correspondence occurred regarding the goods; and (3) "the performance of the contract (including delivery) [occurred] entirely within the state of South Dakota." Id. at 820. We thus noted that the "admittedly slight" contacts were nevertheless comparable to those found adequate to support jurisdiction in Papachristou v. Turbines, Inc., 902 F.2d 685 (8th Cir. 1990). Id.

In Papachristou, another breach of contract action, the en banc court ruled that even though the defendant's sole physical contact with the Arkansas forum was its attempted delivery of the goods in Marion, Arkansas, defendant's total activities directed at the forum were "purposeful":

> The contract which [plaintiff] claims was broken was for sale of an aircraft engine. It was agreed that delivery would be made in Arkansas.

> One of [defendant's] employees came to Arkansas for this purpose, among others. He attempted to make delivery, but a dispute arose . . . . [Defendant's] employee would have come through Arkansas anyway, but he would not have gone to Marion. The side trip to Marion, which can hardly be called accidental, was for the purpose of carrying out the contract.

902 F.2d at 686. We further explained that "Arkansas was the agreed place of performance of the entire contract, and it is also the place where the breach occurred. There is nothing unfair in subjecting the allegedly defaulting seller to suit in Arkansas." Id. at 686-87. Here, the single visit was not the cause of Plaintiff's claim. Accordingly, the claim does not "arise out of" that visit.

In sum, Defendants' actions in making the isolated trip to Arkansas do not reveal an intent to purposefully avail themselves of the protection of that state's laws, or otherwise establish sufficient contacts with Arkansas to justify personal jurisdiction. As noted, Defendants made the trip to Arkansas in an effort to avoid any trademark infringement resulting from the name of their Iowa restaurant. Nothing in the record shows any other connection to Arkansas.[5]

Defendants have insufficient contacts with Arkansas to confer personal jurisdiction over them with respect to the subject of this lawsuit. With respect to

---

[5]Furthermore, in J. McIntyre, where jurisdiction in a products liability action had been premised upon a "stream of commerce" theory, Justices Breyer and Alito noted in an opinion concurring in the judgment that jurisdiction based on the single sale of a product is insufficient for purposes of conferring personal jurisdiction. 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment). While the basis for jurisdiction in this case does not involve the sale of a single product or a stream of commerce theory, the conclusion in the J. McIntyre concurrence that a single contact, in certain contexts, is an insufficient basis for personal jurisdiction, provides relevant guidance.

Plaintiff's ground of appeal seeking jurisdictional discovery, the district court did not expressly rule on that issue, but in any event, we see no basis for such discovery here.

Accordingly, we affirm.

_____