**STATE CENTRAL BANK, Plaintiff,**

v.

**John F. BERZANSKIS, Defendant.**

**No. 3:15–cv–00039–JEG**

United States District Court, S.D. Iowa, Davenport Division.

Signed December 16, 2015

Lynn Wickham Hartman, Mark A. Roberts, Dawn M. Gibson, Simmons Perrine Moyer & Bergman PLC, Cedar Rapids, IA, for Plaintiff.

Robert N. Downer, Sean William Wandro, Meardon Sueppel & Downer PLC, Iowa City, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, Senior Judge, U.S. DISTRICT COURT

This matter is before the Court on Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) brought by Defendant John F. Berzanskis (Berzanskis). Plaintiff State Central Bank (State Central) resists. Neither party requested a hearing on the Motion, and the Court finds a hearing is unnecessary. The matter is fully submitted and ready for disposition.

## I. BACKGROUND [1]

State Central is an Iowa state bank with its principal place of business in Van Buren County, Iowa. Berzanskis is a resident of Illinois.

Berzanskis signed the following four promissory notes with State Central: (1) a note signed on February 18, 2003, in the amount of $100,000 (Note 1); (2) a note signed on September 19, 2005, in the amount of $400,000 (Note 2); (3) a note signed on May 1, 2007, in the amount of $500,000 consolidating Notes 1 and 2 (Note

---

1. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 745 (8th Cir.2011).

3); (4) a renewal of Note 3 signed on September 8, 2008, in the amount of $500,000 (Note 4); and (5) a renewal of Note 4 signed on April 29, 2010, in the amount of $523,888.88 (Note 5). Note 5 was a sixty-month installment note calling for monthly payments of $2,518.89. Notes 1, 2, 3, 4, and 5 are collectively referred to as "the Note."

The last payment made on the Note to State Central was on October 28, 2014. On January 21, 2015, State Central sent Berzanskis a notice of right to cure default followed by a notice of acceleration and demand for payment on February 24, 2015. At the time this lawsuit was filed, Berzanskis owed $488,646.48, inclusive of interest and late charges.

State Central filed this declaratory judgment action against Berzanskis in the Iowa District Court for South Lee County on March 16, 2015. State Central served the summons and petition on Berzanskis on April 2, 2015. Berzanskis timely removed this action on April 21, 2015, based upon diversity of citizenship jurisdiction.

Berzanskis filed this pre-answer motion to dismiss, arguing this Court cannot exercise personal jurisdiction over him because he lacks the requisite contacts with the state of Iowa. State Central resists, arguing Berzanskis spent years borrowing money from an Iowa bank for the purpose of supporting his ongoing investment in an Iowa enterprise and thus clearly availed himself to the benefits of the state of Iowa and should not be surprised to be haled into its courts for failure to pay his debts.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Berzanskis removed this case based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. State Central is an Iowa state bank with its principal place of business in Van Buren County, Iowa. Berzanskis is a resident of the state of

Illinois. State Central alleges that at the time this lawsuit was filed, Berzanskis owed State Central $488,646.48. The diversity of citizenship and amount in controversy requirements of 28 U.S.C. § 1332 are satisfied.

### B. Standard for the Motion to Dismiss under Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts "to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir.2011) (alteration in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004)). "A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir.2015) (citing *K–V Pharm.*, 648 F.3d at 592). "Because Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' our inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir.2014) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.2010) (quoting *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005))).

"The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of

the suit does not offend "traditional notions of fair play and substantial justice." ' " *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 594 (8th Cir.2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))). "The defendant must have engaged in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *K–V Pharm.,* 648 F.3d at 592 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "This purposeful-availment requirement is met where the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " *Id.* (quoting *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174).

■ "The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction." *Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 745 (8th Cir.2011) (quoting *Johnson v. Arden,* 614 F.3d 785, 794 (8th Cir. 2010)). "A court obtains general jurisdiction 'against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.' " *Johnson,* 614 F.3d at 794 (quoting *Dever,* 380 F.3d at 1073 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984))). "[S]pecific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation result[s] from injuries ... relating to [the defendant's] activities [in the forum state.]" *Downing v. Goldman Phipps, PLLC,* 764 F.3d 906, 913 (8th Cir.2014) (second, third, and fourth

alterations in original) (quoting *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 912–13 (8th Cir.2012)), *cert. denied,* —— U.S. ——, 135 S.Ct. 1464, 191 L.Ed.2d 370 (2015).

■ State Central argues only that Berzanskis is subject to specific jurisdiction in Iowa.

> [The Eighth Circuit] uses a five factor test to determine whether a defendant's contacts meet the due process minimum: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties."

*Downing,* 764 F.3d at 912 (quoting *Steinbuch v. Cutler,* 518 F.3d 580, 585 (8th Cir.2008)). "Although 'the first three factors are primary factors, and the remaining two are secondary factors,' [the court] look[s] at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K–V Pharm.,* 648 F.3d at 592–93 (quoting *Johnson,* 614 F.3d at 794).

## C. Specific Jurisdiction Analysis

Berzanskis argues the Court lacks personal jurisdiction over him because he has never conducted business in the state of Iowa and does not own property in the state. He further argues that the payments on the Note were through electronic transfers from Berzanskis' Illinois account and not made to any Iowa account. Berzanskis points out that he signed the Note in Illinois and that the Note contains only a choice-of-law provision, not a forum selection clause. He also asserts that no phone calls were ever made nor other correspondence ever sent to the state of Iowa and that it was a third party, Anthony Lambros (Lambros), who sought Berzanskis to sign the Note to fund Lambros' business.

In resistance to Berzanskis' motion to dismiss, State Central submits the affidavit of State Central loan officer Tyler Logan (Logan), along with several exhibits embracing the loans State Central made to Berzanskis. *See Dever*, 380 F.3d at 1072 (reasoning that when a defendant challenges the exercise of personal jurisdiction, the plaintiff must rebut the defendant's assertions with testimony, affidavits, or other documents). State Central argues it was Berzanskis who initiated contact with State Central to secure a loan for an Iowa business; Berzanskis forwarded the 2003 and 2005 loan requests and supporting documentation to State Central in Iowa at Berzanskis' direction; State Central dispersed the 2003 and 2005 loan proceeds to persons and/or businesses headquartered in Iowa; the funds never left the state of Iowa; and the choice-of-law provision contained in the promissory notes provides further evidence of Berzanskis' deliberate affiliation with the state of Iowa.

█ In performing the personal jurisdiction analysis, the Court first determines whether "the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." *Creative Calling*, 799 F.3d at 979 (internal citations omitted) (citing *K–V Pharm.*, 648 F.3d at 592). "Although the reach of the state long-arm statute is a question of state law and federal courts are required to accept the interpretation given the statute by the state supreme court, *the extent to which the reach of the long-arm statute is limited by due process is a question of federal law*." *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1342 n. 3 (8th Cir.1983) (emphasis added). Iowa's statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution," *Hammond*, 695 N.W.2d at 5, and therefore whether the exercise of personal jurisdiction comports with due process is a question analyzed under the law of the Eighth Circuit rather than state law. *Compare Fastpath*, 760 F.3d at 820 ("Because Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' our inquiry is limited to whether the exercise of personal jurisdiction comports with due process." (quoting *Wells Dairy*, 607 F.3d at 518 (quoting *Hammond*, 695 N.W.2d at 5)), *with Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir.2012) (noting that although Missouri's "long-arm statute extends jurisdiction to the limits of the Due Process Clause," the Missouri Supreme Court has held that the legislature intended the long-arm statute "to provide for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment," and therefore courts must consider these two inquires separately, and determining under Missouri law whether the lawsuit arises out of one of the activities enumerated in Missouri's long-arm statute).[2] According-

---

2. Iowa's long-arm statute, Iowa R. Civ. P. 1.306, states, in relevant part as follows:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

On the other hand, Missouri's long-arm statute, provides the following:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person,

ly, while Iowa courts look at similar factors in determining whether a defendant's contact with the forum state satisfy due process, *see Hammond,* 695 N.W.2d at 5, the law of the Eighth Circuit, not Iowa law, controls this Court's due process analysis.

■ Berzanskis cites *Twaddle v. Twaddle,* 582 N.W.2d 518, 521 (Iowa Ct.App. 1998), and contends that State Central's expectation of repayment in the state of Iowa was an unbargained-for convenience made for State Central's benefit and does not constitute an act by which Berzanskis purposefully availed himself to the state of Iowa. *Twaddle* has limited applicability and, nonetheless, is distinguishable from the present case. In that case, a woman, who lived in Iowa, loaned $35,136 to her son, who lived in Minnesota. *Twaddle,* 582 N.W.2d at 519. Her son made only three payments totaling $900, so his mother filed a breach of contract and promissory estoppel action against him in Iowa state court. *Id.* In finding Iowa lacked personal jurisdiction over the son, the Iowa Supreme Court noted that the son's only ties to Iowa were with his mother, and his contacts with her were not solely for the purpose of soliciting money. Applying Iowa precedent, the court reasoned that

family contacts unrelated to the cause of action were not sufficient to establish personal jurisdiction. *Id.* at 520. The court found critical to its analysis that the son did not actively solicit the loan from his mother and therefore "did not purposely inject himself into Iowa for the purposes of 'doing business' with his mother; he merely accepted an offer by his mother to help him with financing the farm." *Id.* at 521. The court went on to note that the son never conducted business in Iowa, did not own property in Iowa, never signed any documents agreeing to subject himself to personal jurisdiction in the courts of Iowa, and the loan money was used to pay for property located in Minnesota. *Id.*

Unlike the loan in *Twaddle,* the transactions in the present case were not informal loans made between family members. Here, State Central and Berzanskis are both sophisticated parties conducting business at arm's length. The loan documents Berzanskis signed identify Berzanskis as CEO and owner of AMS Mechanical Systems, Inc., in Burr Ridge, Illinois. In addition, the facts of this case do not support Berzanskis' comparison to *Twaddle* that the State Central loan was made at Lambros' request and that Berzanskis did

---

firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting;

(6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

2. Any person, whether or not a citizen or resident of this state, who has lived in lawful marriage within this state, submits himself to the jurisdiction of the courts of this state as to all civil actions for dissolution of marriage or for legal separation and all obligations arising for maintenance of a spouse, support of any child of the marriage, attorney's fees, suit money, or disposition of marital property, if the other party to the lawful marriage lives in this state or if a third party has provided support to the spouse or to the children of the marriage and is a resident of this state.

3. *Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.*

Mo.Rev.Stat. § 506.500 (emphasis added).

not solicit the loan. According to Berzanskis, Lambros introduced Berzanskis to State Central after approaching Berzanskis to provide funding for Lambros' Iowa-based company, Custom Hardware Manufacturing, Inc. (CHMI), located in Keokuk, Iowa. However, Lambros was not, and has never been, an agent for State Central, *see* Logan Aff. ¶ 13, ECF No. 4–11; therefore, the fact that Lambros introduced Berzanskis to State Central is not pivotal in the due process analysis. Nor is the formality (or informality) of the business relationship between Lambros and Berzanskis relevant to the due process analysis. Rather, under the circumstances of this case, it is Berzanskis' own manner of conducting business with State Central in Iowa that the Court considers in determining whether that conduct comports with due process. *See Perkins v. Benguet Consol. Min. Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952) ("The amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case."); *K–V Pharm.,* 648 F.3d at 593 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" (quoting *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174)).

The multiple loan documents signed by Berzanskis and his communications with State Central in Iowa over a seven-year period indicate Berzanskis purposefully availed himself to the state of Iowa for the purpose of securing multiple loans solely to support Lambros' Iowa-based CHMI. Berzanskis' communications include a letter dated February 19, 2003, responding to State Central's request for financial documentation for the loan application for Note 1 and directing that the $100,000 loan proceeds be made payable to Lambros. On September 19, 2005, Berzanskis signed Note 2 and directed that the $400,000 proceeds be disbursed to CHMI. In April and May 2010, Berzanskis repeatedly reached out to Logan in Iowa in connection with securing Note 5. Berzanskis provided to Logan requested documentation and information regarding his investment with Lambros, arranged business conference calls, and directed distribution payments relating to the Note. The various communications were not incidental or inconsequential. Rather, they were informed business transactions directed solely at Berzanskis' ongoing investment in an Iowa business. *See Creative Calling,* 799 F.3d at 981 ("[A] contractual provision, requiring a defendant to remit payment to a company located in the forum State, and the defendant's performance of that term, is a purposeful contact with the forum."). The Iowa choice-of-law provision contained in Notes 1, 2, 3, 4, and 5, although not controlling on the question of personal jurisdiction, neither should it be ignored in considering whether Berzanskis has "purposefully invoked the benefits and protections of [Iowa]'s laws for jurisdictional purposes." *Burger King,* 471 U.S. at 481–82, 105 S.Ct. 2174 ("Nothing in our cases, however, suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes. Although such a provision standing alone would be insufficient to confer jurisdiction, we believe that, when combined with the 20–year interdependent relationship Rudzewicz established with Burger King's Miami headquarters, it reinforced his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.").

Berzanskis' assertion that he did not purposefully avail himself to the benefits and protections of Iowa's laws is unsupportable. Considering the first three factors: (1) the nature and quality of Berzanskis' contacts with Iowa, which include multiple loans totaling over one-half million dollars that were obtained solely for the purpose of funding an Iowa-based business investment; (2) the quantity of those contacts that span more than twelve years[3] and involve five separate Notes; and (3) the relationship of the cause of action to those contacts, solely relating to his Iowa-based business investment, due process is not offended by the exercise of jurisdiction over Berzanskis. *See Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303, 1310 (8th Cir.1977) (finding personal jurisdiction over the defendant was proper in the forum state where a $90,000 loan was payable in that state reasoning the loan was part of "an over-all transaction that was designed to affect, for better or for worse, a holding company, the business of which was centered in [the forum state]" and concluding "each case must be decided in the light of its own facts and circumstances, and it appears to us that a number of factors are to be considered, and that they are not necessarily limited to the physical contacts between the borrower and the forum state but include such factors as the nature, size and purpose of the loan, and perhaps other factors as well"). While the final two factors—the interests of the forum state in providing a forum for its residents and the convenience of the parties—carry less weight and are not dispositive in the due process analysis, *see Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir.2006), consideration of those factors similarly does not offend due process. Iowa has an interest in providing a forum for State Central as it is an Iowa bank and it is in Iowa that State Central suffered the direct effects of Berzanskis' activities. Moreover, the burden to Berzanskis is not so great as to require dismissal. *See Steinbuch*, 518 F.3d at 588 (noting that the forum state has an interest in giving its residents a forum in which to litigate). Berzanskis, who is CEO and owner of AMS Mechanical Systems, Inc., in Burr Ridge, Illinois, and who resides in Palos Park, Illinois,[4] secured loans in Iowa solely for the purpose of investing in an Iowa business with the intention of deriving a benefit from that interstate activity. *See Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174 (considering the final two factors and reasoning that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity," and concluding, "where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed" (internal citations and quotation marks omitted)). State Central has met its burden of making a prima facie showing that personal jurisdiction exists. *See K–V Pharm.*, 648 F.3d at 591–92.

---

**3.** Note 1 was signed in February 2003, and the final note, Note 5, was signed in April 2010. At the time this case was filed in March 2015, more than twelve years after Note 1 was first signed, Berzanskis had not satisfied the Note.

**4.** The Court notes that Palos Park, Illinois, and Des Moines, Iowa, are both located approximately 170 miles from the U.S. District Courthouse for the Southern District of Iowa, Davenport Division, where proceedings in this case will take place.

## III. CONCLUSION

For the reasons stated, Berzanskis' Motion to Dismiss for lack of personal jurisdiction, ECF No. 2, must be **denied**.

**IT IS SO ORDERED.**