### BPI DEVELOPMENT GROUP, L.C., and Scott Pearce, Plaintiffs,

v.

### David GRANGE and Osprey Global Solutions, LLC Defendants.

#### No. 3:15-cv-00136-JEG

United States District Court,
S.D. Iowa, Davenport Division.

Signed March 28, 2016.

---

Robert VP. Waterman, Jr., Benjamin James Patterson, Lane & Waterman LLP, Davenport, IA, Philip A. Burian, Simmons Perrine Moyer & Bergman PLC, Cedar Rapids, IA, Robert H. Lang, Thompson Coburn LLP, Chicago, IL, for Plaintiffs.

Steven J. Pace, Dana L. Oxley, Shuttleworth & Ingersoll P.L.C., Cedar Rapids, IA, for Defendants.

## ORDER

JAMES E. GRITZNER, SENIOR JUDGE UNITED STATES DISTRICT COURT

This matter is before the Court on Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) brought by Defendants David Grange (Grange) and Osprey Global Solutions, LLC (Osprey Global) (collectively, Defendants). Plaintiffs BPI Development Group (BPI) and Scott

Pearce (Pearce) (collectively, Plaintiffs) resist. Neither party requested a hearing on the Motion, and the Court finds a hearing is unnecessary. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

This lawsuit arises out of a disputed transfer of funds from Plaintiffs Pearce and BPI to Defendants Grange and Osprey Global in September 2011. Plaintiffs allege that they loaned $250,000 to Defendants pursuant to a contract that specified a 5% annual interest rate and mandated payment in full by December 31, 2012. Defendants argue instead that Plaintiffs were simply reimbursing Osprey Global for payments that Osprey Global had previously made on BPI's behalf.

BPI is an Iowa limited liability company, and Pearce, BPI's sole member, is an Iowa citizen. Grange is a citizen of North Carolina. Osprey Global is a Delaware limited liability company whose principal place of business is in North Carolina and whose members Plaintiff alleges are citizens of North Carolina, Texas, Virginia, Arizona, and California.

From 2001 until 2015, Grange, a retired Army officer, owned a farm in Galena, Illinois. There, he first connected with Pearce in 2004 when Grange hired Pearce to install a swimming pool at Grange's farm. By 2011, Pearce was collaborating with Grange in Grange's "Osprey" business ventures. Osprey Global, founded in 2011 by individuals including Grange (but not Pearce), sought "to provide security, medical support, and logistical assessment services" in connection with global "humanitarian, security training, and medical aid" efforts. Defs.' Br. 2, ECF No. 12-1. In July 2011, Grange, Pearce, and other individuals formed Osprey Air Group, LLC (Osprey Air) to provide air support for Osprey Global. Pearce, a pilot, was involved in efforts to secure aircraft for Osprey Air beginning at least in March 2011. Plaintiffs allege that while Pearce owned an interest in Osprey Air and served as its president until September 7, 2012, Pearce had no ownership interest in nor received any compensation from Osprey Global.

Pearce located a Dornier 328-30s0 jet aircraft (the Aircraft) for purchase in either North Carolina or South Carolina [1] in early 2011. Defendants claim that Pearce offered to purchase the Aircraft on behalf of BPI and that BPI's offer required two deposits totaling $250,000. Defendants attach to their motion a copy of a letter from BPI, dated May 5, 2011 and signed by Pearce, offering to purchase the Aircraft on those terms. Plaintiffs, however, contend that "Osprey Global was ultimately to be the buyer of the Aircraft[,] though Defendants did have BPI front the Aircraft contract negotiations so that Defendants could maintain anonymity in the transaction." Pls.' Br. 5, ECF No. 15.

Regardless, it was Osprey Global, not BPI, that ultimately made the two required deposits totaling $250,000 as part of the offer to purchase the Aircraft. The parties did not fund the remainder of the $4 million purchase price, and the $250,000 deposit was later rendered non-refundable.

On September 1, 2011, Plaintiffs, while in Iowa, wired $250,000 to Grange in North Carolina. Plaintiffs do not state whether the funds came from an account held by Pearce or by BPI. Defendants state that the funds were wired "into Osprey Global's checking account," Defs.' Br. 4, ECF No. 12; see also Pls.' Br. Ex. A-1

---

1. While Defendant's brief states that the aircraft was located in "Myrtle Beach, North Carolina," Defs.' Br. 3, ECF No. 12-1, Defendant's Exhibit 3-1 states that the aircraft was located in "Myrtle Beach, SC." Osprey Business Plan 45, Defs.' Br. Ex. 3, ECF No. 12-3.

at 7, ECF No. 15-2 (listing Osprey Global as "Beneficiary"), and Plaintiffs allege that Grange accepted the wire transfer.

The parties disagree about what this wire transfer represents. Defendants argue that this $250,000 transfer was simply a reimbursement of Osprey Global's payment of the $250,000 deposit from its failed attempt to purchase the Aircraft, and came with no repayment obligation on the part of Osprey Global. Plaintiffs, meanwhile, say that the wire transfer had nothing to do with the Aircraft deposit. Instead, Plaintiffs allege that either Pearce or BPI transferred the funds in response to an August 31 email from Grange demanding funds to cover business expenses. Plaintiffs characterize this email as Defendants "soliciting" Plaintiffs to enter into a contract for a loan, the terms of which allegedly included 5% annual interest and full repayment by December 2012. Pls.' Br. 4, ECF No. 15; Compl. ¶ 5, ECF No.1.

Plaintiffs allege that Defendants "partially performed" the contract by making an "interest payment" to Plaintiffs in Iowa. Compl. ¶ 5, ECF No. 1. In particular, Plaintiffs allege that BPI sent Osprey Global two invoices—the first one dated March 7, 2012, and the second one dated September 25, 2012—that listed, among other line items, interest payments due under the alleged loan contract. Plaintiffs allege that on August 11, 2012, Osprey Global then paid to BPI in Iowa an amount matching the interest charge on the first of the two invoices, dated March 7, 2012. Neither Defendant made any further purported interest payments, and Pearce cut ties with Osprey Air on September 7, 2012.

On November 30, 2015, Plaintiffs filed this lawsuit against Defendants claiming breach of contract and unjust enrichment arising from the non-payment of the alleged $250,000 loan. Plaintiffs allege that they are entitled to $279,511.30, which includes unpaid interest as of December 1, 2015, plus costs and pre-judgment interest.

Defendants filed this motion to dismiss Plaintiffs' claims for lack of personal jurisdiction pursuant to Fed. R. Civ. P 12(b)(2), and also for improper venue in the Southern District of Iowa pursuant to Fed. R. Civ. P 12(b)(3) and 28 U.S.C. § 1391. Defendants argue that they have few if any contacts with Iowa and that the challenged transaction relates to events in North Carolina. Both parties submitted affidavits and multiple exhibits in support of their motion papers.

## II. DISCUSSION

### A. Standard for the Motion to Dismiss Under Rule 12(b)(2)

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts "to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir.2011) (alteration in original) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir.2004)). "A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir.2015).

Defendants contend that Plaintiffs do not satisfy the requirements of Iowa's long-arm statute, Iowa Code § 617.3. However, "[b]ecause Iowa's long-arm statute expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Consti-

tution, our inquiry is limited to whether the exercise of personal jurisdiction comports with due process." State Cent. Bank v. Berzanskis, 149 F. Supp.3d 1121, 1123, No. 3:15–cv–00039–JEG, 2015 WL 8953383, at *2 (S.D.Iowa Dec. 16, 2015) (quoting Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir.2014)). Thus, Plaintiffs will satisfy the requirements of Iowa's long-arm statute as long as the exercise of personal jurisdiction comports with federal due process standards.

■ "Due process requires that the defendant purposefully establish 'minimum contacts' in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend 'traditional conceptions of fair play and substantial justice.'" K–V Pharm. Co., 648 F.3d at 592 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464, 474–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). This connection must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Creative Calling, 799 F.3d at 980 (quoting Burger King, 471 U.S. at 474–75, 105 S.Ct. 2174). The defendant's contact with the forum state must be such that it "should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444. U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ "To assess whether a defendant has purposefully availed itself of the forum and established minimum contacts, we examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts." Creative Calling, 799 F.3d at 980. "In a contract case, this court evaluates 'prior negotiations and contemplated future con-sequences, along with the terms of the contract and the parties' actual course of dealing' to determine 'whether the defendant purposefully established minimum contacts within the forum.'" Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc., 702 F.3d 472, 477 (8th Cir. 2012) (quoting Burger King, 471 U.S. at 479, 105 S.Ct. 2174). In such cases, "personal jurisdiction is proper where the defendant 'reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state.'" Creative Calling, 799 F.3d at 980 (quoting Burger King, 471 U.S. at 473, 105 S.Ct. 2174).

■ A defendant can be subject to either "general" or "specific" jurisdiction. Id. at 979. General jurisdiction allows a court to hear "any and all claims" against a defendant when the defendant's contacts within a state "are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Defendants, who are a North Carolina citizen who previously owned property in nearby Illinois and a Delaware corporation based in North Carolina whose ties to Iowa are primarily related to the instant litigation, are not "essentially at home" in Iowa. Plaintiffs argue that Grange's use of the Dubuque airport, emails sent to Plaintiffs in Iowa, and the contacts relating to the alleged loan suffice to establish general jurisdiction. But these sporadic contacts do not come close to resembling the "paradigms" of general jurisdiction such as domicile, place of incorporation, or place of business. See Goodyear, 131 S.Ct. at 2853–54.

■ Specific jurisdiction, meanwhile, arises "when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts." Creative Calling, 799 F.3d at 980. The Eighth Circuit evaluates five factors in determining whether specific jurisdiction exists: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 913 (8th Cir. 2014) (internal citations and quotation marks omitted); see also State Central, 149 F.Supp.3d at 1124, 2015 WL 8953383, at *2 (same). "The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists." Dairy Farmers of Am., 702 F.3d at 477.

■ Finally, because the parties submitted affidavits and exhibits in support of their motion papers, this effectively converts Defendants' motion to dismiss into a motion for summary judgment on the question of personal jurisdiction. See, e.g., Creative Calling, 799 F.3d at 979. While Plaintiffs ultimately bear the burden of proof to establish personal jurisdiction, "[a]t the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [Plaintiffs], is sufficient to support a conclusion that the exercise of personal jurisdiction over [Defendants] is proper." See id.; see also Radaszewski by Radaszewski v. Telecom Corp., 981 F.2d 305, 309 (8th Cir.1992) ("[A] complaint should not be dismissed for want of jurisdiction, before trial, if there is any genuine issue as to any fact material to the jurisdictional question.").

## B. Specific Jurisdiction Analysis

Defendants argue that they are not subject to personal jurisdiction in Iowa because their contacts with Plaintiffs "had nothing to do with Iowa." Defs.' Reply 1, ECF No. 18. Defendants admit that Grange sent numerous communications to Pearce knowing that Pearce resided in Iowa, and that Plaintiffs and Defendants collaborated on business ventures while Plaintiffs were located in Iowa. But Defendants argue that these contacts are not purposeful contact with Iowa but instead "rely on Plaintiffs' own unilateral acts." Id. at 11. Defendants argue that communications directed at an individual within a state do not suffice to establish personal jurisdiction and that the business ventures in question were "part of a bigger relationship centered in North Carolina." Id. at 11-13. Citing Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593–94 (8th Cir.2011), Defendants contend that even payments made to an individual in the forum state do not necessarily give rise to jurisdiction where the contacts were "incidental." Defs.' Br. 12, ECF No. 12-1. Defendants also submit the affidavit of David Grange, along with several exhibits concerning Osprey Air and the attempted purchase of the Aircraft, in support of their argument that the relationship between the parties was centered in North Carolina, not Iowa.

In resistance to Defendants' motion to dismiss, Plaintiffs submit the affidavit of Scott Pearce and emails and other documents concerning the alleged $250,000 loan and the business relationship between the parties. Plaintiffs argue that jurisdiction is proper because Defendants solicited a loan from Plaintiffs in Iowa and conducted ongoing business with Plaintiffs, including large volumes of emails and telephone calls with Plaintiffs, knowing that Plaintiffs were located in Iowa. In addition, Plaintiffs

argue that Defendants partially performed their obligations under the loan agreement in Iowa by sending one interest payment to Plaintiffs. Plaintiffs cite Creative Calling, 799 F.3d at 981, for the proposition that the above conduct suffices to establish jurisdiction.

Indeed, the Eighth Circuit in Creative Calling found that "[a] defendant's solicitation of a business relationship with a company incorporated in the forum State that takes place within that State is a relevant contact." 799 F.3d at 980. Although Defendants deny the existence of the loan agreement—a copy of which is attached neither to Plaintiffs' complaint nor to their brief in opposition to this motion—and thus also deny the allegation that they solicited a loan from Plaintiffs in Iowa, the Court finds Plaintiffs have raised questions of fact sufficient to establish a prima facie showing that the exercise of personal jurisdiction over Defendants would not violate due process. Plaintiffs attach an email from Grange immediately preceding the $250,000 wire transfer by Plaintiffs that arguably requests $250,000 from Plaintiffs, as well as an invoice for interest expenses bearing some of the terms of the alleged loan agreement. While a jury might reach a different conclusion regarding the existence of a loan contract or the significance of Grange's email demanding repayment of $250,000, this evidence, when viewed in the light most favorable to Plaintiffs, makes a sufficient showing that Defendants reached into Iowa to solicit a loan from Plaintiffs that was to be repaid to Plaintiffs in Iowa. Similarly, a reasonable jury could conclude that Defendants, responding to an invoice sent from Iowa by Plaintiffs, partially performed their obligations under the loan contract by sending an alleged interest payment to Plaintiffs in Iowa. The Creative Calling court found it highly relevant that the defendant in that case sent payments pursuant to an alleged contract to the Iowa plaintiff: "This type of contractual provision, requiring a defendant to remit payment to a company located in the forum State, and the defendant's performance of that term, is a purposeful contact with the forum." Creative Calling, 799 F.3d at 891. Here, Plaintiffs allege a contract requiring repayment by Defendants to Plaintiffs in Iowa and partial performance in the form of an alleged interest payment made to Plaintiffs in Iowa.

Defendants argue that Creative Calling is "easily distinguishable" because the Hong Kong-based defendant in that case also delivered thousands of product samples to Iowa in the course of its business relationship with the Iowa plaintiff. Defs.' Reply 4, ECF No. 18 (citing Creative Calling, 799 F.3d at 981). But this fact was most relevant in Creative Calling because the dispute between the parties concerned those samples, allegedly defective, that were shipped to Iowa. Creative Calling, 799 F.3d at 975. By contrast, the dispute in Digi–Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519 (8th Cir.1996), which Defendants argue more closely resembles this case, concerned the alleged breach of contract by a Singapore company to deliver phones to a Minnesota corporation, in Singapore.[2] In other words, performance of the contract was to be made in Singapore, not in Minnesota. That

---

2. As the Eighth Circuit noted in Digi–Tel:

No part of the contract was to be performed in Minnesota. Proteq was to develop and produce the phones overseas and transfer ownership to Major in Singapore. The delivery term was "F.O.B. Singapore" which means that the seller was obligated to deliver to Singapore and nowhere else. We pause to emphasize that no shipment of actual product came into Minnesota.

Digi–Tel, 89 F.3d at 525 (citations omitted).

four phone samples happened to have been shipped to Minnesota at one point was a "fortuitous" contact that "d[id] not create a 'substantial connection' to Minnesota." Id. at 523. Thus, the key distinction between Creative Calling and Digi–Tel is not the number of samples shipped but "the relationship of the cause of action to the contacts." See State Central, 149 F.Supp.3d at 1128–29, 2015 WL 8953383, at *5.

Here, performance of the loan contract alleged by Plaintiff did not involve shipping product to Iowa but instead simple repayment of interest and principal. State Central illustrates the application of Creative Calling to the context of a financial loan. State Central, 149 F.Supp.3d at 1126–27, 2015 WL 8953383, at *4. In that case, defendant Berzanskis, an Illinois resident, borrowed money from an Iowa bank subject to five promissory notes over seven years. Id. This Court found that exercise of personal jurisdiction over Berzanskis in Iowa was proper. Id. Defendants correctly point out that State Central emphasized that the out-of-state defendant's purpose of securing loans from the Iowa plaintiff was to "fund[ ] an Iowa-based business investment." See id. at 1128, 2015 WL 8953383, at *5. Here, by contrast, Plaintiffs allege that Defendants' purpose in securing the $250,000 loan was to fund ongoing expenses of a North Carolina business. Yet ultimately, State Central, like the instant case, involved "purposeful contact[s]" arising from an alleged contract "requiring a defendant to remit payment to a company located in the forum State, and the defen-

dant's performance of that term." State Central, 149 F.Supp.3d at 1127, 2015 WL 8953383, at *4 (quoting Creative Calling, 799 F.3d at 981). Defendants' alleged contacts with Iowa, that is, the alleged contract and Defendant's alleged nonperformance, are thus right at the center of this lawsuit.

Viasystems, relied on by Defendants, is another example of a case involving "random, fortuitous, and attenuated contacts" that do not give rise to specific jurisdiction. Viasystems, 646 F.3d at 594. The defendant in Viasystems—a German corporation—contracted with the Missouri plaintiff to provide cooling fans which the plaintiff incorporated in products that it sold to a third party. Id. at 592. But the defendant's cooling fans were manufactured in Germany and shipped to China, where they were delivered to the plaintiff. Id. From there, the plaintiff's products were sold to the third party in Japan. Id. The defendant's only contacts with Missouri, the forum state, consisted of communications with the plaintiff about the defects in the defendant's products and a partial reimbursement sent to the plaintiff in Missouri. Id. Here, unlike in Viasystems, the alleged agreement required performance—satisfaction of the loan—in the forum state.[3]

Defendants also argue that "[t]his case is more closely aligned" with Twaddle v. Twaddle, 582 N.W.2d 518 (Iowa Ct.App. 1998). Defs.' Reply 4, ECF No. 18. Like in this case, the lawsuit in Twaddle concerned

---

**3.** Defendants also cite Weise v. Legend Air Suspensions, Inc., 985 F.Supp.2d 964 (S.D.Iowa 2012), which involved the purchase of a motorcycle by an Iowa plaintiff (Weise) from a Florida business (Ironworks) and its owner. Id. at 967. In that case, "Wiese sought to purchase the good and traveled to Florida to do so, any resulting debt would have been owed in Florida, no further or on-going sales resulted, and no service was provided by Ir-

onworks in Iowa." Id. at 972. While the out-of-state parties engaged in communications with the Iowa plaintiff, those communications and two isolated sales of products to Iowa consumers were too "few and attenuated" contacts under the circumstances. Id. at 973. Here, by contrast, Plaintiffs alleged that Defendants solicited a financial loan from Plaintiffs in Iowa that created a repayment obligation to Plaintiffs lasting over one year.

the alleged nonpayment of a loan from an in-state plaintiff by an out-of-state defendant. Twaddle, 582 N.W.2d at 519. However, the Twaddle court noted that "[i]t is critical to our analysis that the nonresident ... did not actively solicit the loan from his mother." Id. at 521. Because the out-of-state defendant "merely accepted an offer by his mother to help him with financing the farm," the court concluded that the defendant "did not purposely inject himself into Iowa for the purposes of 'doing business'" with the plaintiff. Id. In contrast, viewing the facts alleged in this case in the light most favorable to Plaintiffs, a reasonable jury could conclude that Defendants sought to "do business" with Plaintiffs in Iowa by soliciting a loan from Iowa plaintiffs, with repayment to be made to Plaintiffs in Iowa.

Ultimately, this Court must conclude that Plaintiff has sustained its burden to show that Defendants purposefully availed themselves of the laws and protections of Iowa by allegedly soliciting and entering into a loan agreement to be repaid to Plaintiffs in Iowa. Consideration of the final two factors does not significantly alter the due process analysis. Iowa has an interest in providing a forum for Plaintiffs, as it is in Iowa that Plaintiffs allege that they suffered the direct effects of Defendants' activities. See State Central, 149 F.Supp.3d at 1128–29, 2015 WL 8953383, at *5. Moreover, the inconvenience to Defendants does not appear to be so great as to require dismissal. The exercise of personal jurisdiction over Defendants in this action does not offend due process.

## C. Venue Analysis

■ Defendants also move to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(3) or to transfer the case to the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b)(2). Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "[W]e do not ask which district among two or more potential forums is the 'best' venue, rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir.2003). Courts analyzing venue must focus on the defendant's activity, not the plaintiff's. Steen v. Murray, 770 F.3d 698, 702–03 (8th Cir.2014).

Defendants argue that the Southern District of Iowa is not the federal judicial district with the greatest connection to the lawsuit. Defendants are both residents of North Carolina, and while Plaintiff Pearce traveled to North Carolina to conduct business with Defendants, Defendants do not generally do business in Iowa, the alleged loan agreement at issue here notwithstanding. Defendants argue that venue is improper because Defendants, who did not travel to Iowa in the course of negotiating or performing the alleged loan agreement, "conducted all of their activities related to the venture in North Carolina." Defs.' Br. 18, ECF No. 12 (citing Steen v. Murray, 770 F.3d at 703–04).

■ The Eighth Circuit in Steen found venue in the Southern District of Iowa to be improper where Plaintiff, an Iowa resident, hired a Nebraska law firm to perform legal work relating to Iowa land. Steen, 770 F.3d at 703–04. Plaintiff sued the law firm for malpractice, and "the alleged malpractice ... was entirely performed in Nebraska." Id. Steen, however, involved a tort claim where the alleged wrongful acts were committed in a location other than the forum; all that happened in the forum district was that the plaintiffs felt the effects of the defendants' alleged wrongful conduct. Id. In Steen, the in-state

plaintiffs solicited the services of the out-of-state Nebraska law firm. Id. But this case presents a breach of contract claim where Defendants allegedly reached into Iowa, soliciting a loan from an Iowa resident and agreeing to perform their obligations under the alleged loan agreement by remitting payment to Plaintiffs in Iowa. See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (noting that venue was "clearly proper" under 28 U.S.C. § 1391(a)(2) in the judicial district "within which the contract was performed"); see also Advanced Logistics Consulting, Inc. v. C. Enyeart LLC, 2009 WL 1684428, at *3 (D.Minn. June 16, 2009) (cited at Defs.' Br. 18) (finding venue to be proper for breach of contract actions in Minnesota where defendants, Colorado residents, allegedly breached agreements with Minnesota plaintiff). Thus, this District has a "substantial connection" to the claim, even if another district may have greater contacts.

## III. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss for lack of personal jurisdiction and improper venue, ECF No. 12, must be **denied**.

**IT IS SO ORDERED.**